IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
Fort Pierce Division

| | |
|---|---|
| DAN BONGINO | ) |
| Plaintiff, | ) |
| v. | ) Case No. _____ |
| | ) |
| THE DAILY BEAST COMPANY, LLC | ) **TRIAL BY JURY** |
| | ) **IS DEMANDED** |
| Defendant. | ) |

# COMPLAINT

Plaintiff, Dan Bongino ("Bongino" or "Plaintiff"), by counsel, pursuant to Rule 3 of the Federal Rules of Civil Procedure, files the following Complaint against Defendant, The Daily Beast Company, LLC ("Daily Beast").

Plaintiff seeks (a) compensatory damages and punitive damages in a sum not less than **$15,000,000.00**, (b) prejudgment interest on the principal sum awarded by the Jury from December 10, 2018 to the date of Judgment at the rate of 6.77 percent per year, (c) reasonable attorney's fees, and (d) costs – arising out of the Defendants' defamation, commercial disparagement, and deceptive acts and unfair practices in trade or commerce.

## I.  INTRODUCTION

1. Daily Beast is a digital assassin owned and controlled by billionaire Clinton-devotees, Barry Diller and Diane von Furstenberg. Daily Beast operates an active website [https://www.thedailybeast.com/] accessible to millions of Floridians.

This case arises out of Daily Beast's intentional use of its website and Twitter to smear Plaintiff's reputation and harm his business.

2. On December 10, 2018, Daily Beast published an article written by Lachlan Markay ("Markay") with the clickbait headline, "**Dan Bongino out at NRATV – BONGI-NO-MORE**". [https://www.thedailybeast.com/sources-dan-bongino-out-at-nratv (the "Daily Beast Article")].

3. The Daily Beast Article falsely states that:

- "**The National Rifle Association's media arm has dropped pro-Trump firebrand Dan Bongino from its lineup of conservative commentators, two sources with knowledge of the decision told The Daily Beast**".

4. Daily Beast published the false statements with reckless disregard for the truth. Prior to publication, Markay sent Plaintiff the following text messages:



As evidenced by his texts, Markay knew that NRATV had not "dropped" Plaintiff. Markay knew the truth – that Plaintiff had simply decided not to renew his contract. Rather, than report the truth as told to Markay by his source, Daily Beast deliberately misrepresented that NRATV fired Plaintiff and terminated his show, *We Stand*.

## II. PARTIES

5.  Plaintiff is a citizen of Florida.  He lives in Stuart, Florida (Martin County).  He is married with two daughters.  Plaintiff graduated from the City University of New York with Bachelor's and Master's Degrees in psychology.  He earned his Master's in Business Administration from Penn State University.  He was a member of the New York City Police Department from 1995 to 1999.  In 1999, he joined the United States Secret Service.  In 2006, Plaintiff was assigned to the U.S. Presidential Protection Division, where he protected President George W. Bush and investigated federal crimes.  Plaintiff remained on protective duty after Barack Obama became President.  Plaintiff has authored several books about his career as a Secret Service agent: *Life Inside the Bubble*, released in 2013, and *The Fight: A Secret Service Agent's Inside Account of Security Failings and the Political Machine*, published in 2016.  Plaintiff is an outspoken supporter of President Donald Trump.  In 2018, Plaintiff published the New York Times best-seller *Spygate: The Attempted Sabotage of Donald J. Trump*.  Plaintiff is the host of The Dan Bongino Show. [http://www.westwoodonepodcasts.com/pods/the-dan-bongino-show/; https://bongino.com/].  He is a regular contributor on Fox News.  1,320,000 people follow Plaintiff on Twitter [https://twitter.com/dbongino] and 611,000 people follow him on Facebook.  [https://www.facebook.com/dan.bongino/].

6.  Plaintiff has never been fired or terminated from any position in his life.

3

7. Defendant, Daily Beast, is a limited liability company organized and existing under Delaware law, with headquarters in New York, West Hollywood, Washington D.C., and Chicago. On its active website, https://www.thedailybeast.com/, Daily Beast curates and publishes existing and original online content from a roster of contributors in the United States. Upon information and belief, Daily Beast is owned by IAC/Interactive Corp. ("IAC"). Daily Beast is one of IAC's "Premium Brands". [http://ir.iac.com/static-files/66a65771-ec1c-480d-8e89-64d2d312d44c]. Daily Beast has over 20 million unique visitors per month. The site reaches more than 1 million readers a day in Florida and elsewhere in the United States. [http://www.iac.com/brand/daily-beast; https://www.thedailybeast.com/company/about-us]. Through its website, Daily Beast solicits advertisements and membership (subscriptions to various services and products). Upon information and belief, Daily Beast has thousands of subscribers in Florida and earns millions from advertisements directed at Florida.

8. Daily Beast promotes its left-wing ideology and agendas via its website and social media. Daily Beast operates a Twitter account, **@thedailybeast**, with over 1,250,000 followers. [https://twitter.com/thedailybeast].

### III.   JURISDICTION AND VENUE

9. The United States District Court for the Southern District of Florida has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 (Diversity Jurisdiction) and 28 U.S.C. § 1367 (Supplemental Jurisdiction). The parties are citizens of different States and the amount in controversy exceeds the sum or value of $75,000, exclusive of interest, costs and fees.

4

10. Daily Beast is subject to general and specific personal jurisdiction in Florida. Its business contacts with Florida are continuous and systematic. It transacts substantial business in Florida and committed multiple acts of defamation and intentional torts, in whole or part, in Florida. Daily Beast has minimum contacts with Florida such that the exercise of personal jurisdiction over it comports with traditional notions of fair play and substantial justice and is consistent with the Due Process clause of the United States Constitution. Daily Beast's defamation was purposefully directed at Plaintiff in Florida. Plaintiff's claims arise directly from and relate to Daily Beast's publication of false and defamatory statements in Florida. *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770 (1984) and *Calder v. Jones*, 465 U.S. 783 (1984)); *see Internet Solutions Corp. v. Marshall*, 39 So.3d 1201, 1214-1216 (Fla. 2010) (holding a nonresident defendant commits a tortious act in Florida by virtue of posting defamatory statements about a Florida resident on a website accessed in Florida).

11. Venue is proper in the Fort Pierce Division of the United States District Court for the Southern District of Florida pursuant to Title 28 U.S.C. §§ 1391(b)(1) and 1391(b)(2). Daily Beast resides in Florida by operation of law. Daily Beast published and republished defamatory statements to a wide audience that includes subscribers, followers and other persons who reside within the Fort Pierce Division. Daily Beast caused substantial harm to Plaintiff's personal and professional reputations in Florida. A substantial part of the events giving rise to the claims stated in this action occurred in the Southern District of Florida.

## IV.  STATEMENT OF ADDITONAL MATERIAL FACTS

12.  Prior to December 10, 2018, Daily Beast published a series of articles about Plaintiff that illustrate Daily Beast's long-standing animus and ill-will towards Plaintiff.  For instance, in a February 22, 2018 article, Daily Beast misrepresented that Plaintiff stated that students at Parkland High School in Florida should "stay quiet" about gun rights.  Plaintiff immediately complained about the fake news:



Daily Beast admitted the false reporting. An "editor's note" now reads: "*This story has been updated to more accurately reflect what Bongino said about the Parkland students*". [https://www.thedailybeast.com/fox-news-shepard-smith-condemns-baseless-parkland-conspiracy-theories]. In October 2018, Daily Beast again targeted Plaintiff in an extremely insulting and disparaging article that referred to Plaintiff as a "Trump whisperer", an "informal Trump advisor" forcefully defending "dubious claims", and a person who molded himself in the "Trumpian model" to wage war on the press and the truth. [https://www.thedailybeast.com/dan-bongino-devotes-his-life-to-owning-the-libs-trump-hangs-on-his-every-word].

13. Daily Beast's actual malice and enmity towards Plaintiff is evidenced by its decision to broadly republish the false statements in the Daily Beast Article to a new target audience – Daily Beast's 1,250,000 Twitter followers:



[https://twitter.com/thedailybeast/status/1072239556840353792].

14. In addition to Daily Beast, Daily Beast reporters, acting within the scope of their employment and in the pursuit of Daily Beast's agenda and interests, amplified

the insult and defamatory effect of the Daily Beast Article by gratuitously republishing the Daily Beast Article to their Twitter followers, *e.g.*:

> https://twitter.com/willsommer/status/1072239167227215874
> ("Trump superfan Dan Bongino has lost his show on NRA TV: sources").

15.     Between December 10, 2018 and the present, the Daily Beast Article was tweeted and retweeted by numerous third-parties to millions more on Twitter, *e.g.*:



8





16. The defamatory gist of the Daily Beast Article, and the way it was universally understood by viewers, was that Plaintiff had been fired by NRATV. [*E.g.*, https://twitter.com/jessehawken/status/1072250580939214848 ("**Dan Bongo gets the axe**"); https://twitter.com/ALT_uscis/status/1072255182875123712 (**"Dan Bongino Out at NRATV Can you unblock me you salty piece of hard to employ?"**); https://twitter.com/Arriadna/status/1072292854960152576 ("**Oops, another Trumper fired**")].

17. Inveterate Trump-hater, Rick Wilson of Florida, republished the Daily Beast Article to his 649,000 Twitter followers together with the words, "Womp womp." [https://twitter.com/TheRickWilson/status/1072248324760195073]. Wilson imitated the noise made in old cartoons or on gameshows to indicate someone had done something embarrassingly dumb, or failed at something, or whatever they did backfired on them (first womp is a higher frequency sound than the second womp).

10

18. On December 11, 2018, NRATV published an official statement condemning the Daily Beast and the Daily Beast Article. NRATV tweeted the following:



[https://twitter.com/NRATV/status/1072535386033930241].

11

19. In spite of NRATV's public statement, Daily Beast refuses to retract and correct the false statement that NRATV "dropped" Plaintiff from its lineup.

20. On December 5, 2019, Plaintiff, pursuant to Fla Stat. § 770.01, served notice on Daily Beast, specifying the statements in the Daily Beast Article and on its Twitter feed which Plaintiff alleges to be defamatory.

21. Daily Beast's false and defamatory statements were not published in good faith; the falsity was not due to an honest mistake of the facts; and there were no reasonable grounds for believing that the statements about Plaintiff were true. In spite of Plaintiff's request for a retraction and apology, Daily Beast refuses to make and issue a full and fair correction, apology, or retraction. Daily Beast's defamatory statements remain on the Internet to this very day.

## COUNT I – **DEFAMATION**

22. Plaintiff restates paragraphs 1 through 21 of this Complaint and incorporates them herein by reference.

23. Daily Beast made and published to third-parties, including subscribers, viewers, and followers in Florida, false factual statements, which are detailed verbatim above, of or concerning Plaintiff.

24. By publishing the Daily Beast Article on the Internet and by tweeting the false statements, Daily Beast knew or should have known that their false and defamatory statements would be republished over and over and over by third-parties millions of times to Plaintiff's detriment and injury. Republication was the natural and probable consequence of Daily Beast's actions and was actually and/or presumptively authorized by Daily Beast. In addition to the original publications, Daily Beast is liable for the

millions upon millions of republications of the false and defamatory statements by its reporters and third-parties.

25. Daily Beast's false statements constitute defamation *per se* or defamation *per quod*. The statements impute to Plaintiff an unfitness to perform the duties of an office or employment for profit, or the want of integrity in the discharge of the duties of such office or employment, and tend to subject Plaintiff to distrust, ridicule, scorn, contempt, or disgrace. Daily Beast's statements also prejudice Plaintiff in his profession as a radio host and commentator in the eyes of a substantial and respectable minority of the community.

26. Daily Beast's false and defamatory statements caused Plaintiff to suffer and incur both presumed and actual damages, including loss and injury to his business, insult, pain, embarrassment, humiliation, mental suffering, harm to Plaintiff's name and reputation, out-of-pocket loss, and other actual damages.

27. Daily Beast acted with actual malice and reckless disregard for the truth for the following reasons:

    a. Daily Beast knew the statements were false, but published them anyway.

    b. Daily Beast violated its own Code of Ethics and Standards [https://www.thedailybeast.com/company/code-of-ethics] and abandoned all journalistic standards in writing, editing and publishing the Daily Beast Article and the follow-on tweets.

    c. Daily Beast conceived the story line – that Plaintiff had been fired – in advance of any investigation and then consciously set out to manufacture evidence to

conform to the preconceived story. Daily Beast knew the preconceived narrative was false. At least one of Markay's anonymous sources told him that Plaintiff had decided not to renew his contract.

   d. Daily Beast was in possession of information that demonstrated the falsity of its statements. It consciously and intentionally ignored known and available contradictory evidence that demonstrated the statement about Plaintiff was false.

   e. Daily Beast harbored extreme bias, ill-will and desire to hurt Plaintiff because of Plaintiff's support for President Trump and because of Plaintiff's conservative ideology.

   f. Daily Beast retaliated against Plaintiff because he supports President Trump. Daily Beast sought to undermine Plaintiff's credibility and cast aspersions on his performance as a commentator.

   g. Daily Beast chose to manufacture and publish false statements about Plaintiff disproportionate to the occasion, when they knew there was no evidentiary basis for the statements. Daily Beast did not act in good faith because, in the total absence of evidence, it could not have had an honest belief in the truth of its statements about Plaintiff.

   h. Daily Beast and its agents, acting in the ordinary scope of their employment, reiterated, repeated and continued to publish the false defamatory statements out of a desire to gain notoriety, generate revenues and profits for themselves, and hurt Plaintiff.

   i. Daily Beast initiated the defamation, going out of its way to publish extra-judicial statements about Plaintiff to the broadest possible audience.

28. As a direct result of Daily Beast's defamation, Plaintiff suffered substantial presumed and actual damages and loss, including, but not limited to, pain and suffering, emotional distress and trauma, insult, anguish, stress and anxiety, public ridicule, humiliation, embarrassment, indignity, damage and injury to his personal and professional reputations, loss of business and income, attorney's fees, costs, and other out-of-pocket expenses in the amount of $10,000,000.00 or such other amount as is determined by the Jury.

### COUNT II – COMMERCIAL DISPARAGEMENT

29. Plaintiff restates paragraphs 1 through 28 of this Complaint and incorporates them herein by reference.

30. Daily Beast published and disseminated widespread false and disparaging information about Plaintiff, which is detailed verbatim above.

31. Daily Beast knew its statements were false and acted with the specific intent to call into question the quality of Plaintiff's services for NRATV and to injure Plaintiff in his business and professional. Daily Beast knew or reasonably should have known that its published statements would likely result in inducing others, especially those in the media industry, not to deal with the Plaintiff.

32. None of Daily Beast's statements are privileged. Daily Beast had no right to publish false and disparaging information about Plaintiff. It knew of the falsity of its statements and acted with wanton, intentional and reckless disregard concerning publication. Daily Beast acted with ill-will and its intended to interfere with the economic interests of Plaintiff, including Plaintiff's profession as a radio host and political commentator, in an unprivileged fashion.

33. Daily Beast's statements and actions constitute commercial/business disparagement under Florida law.

34. Daily Beast's commercial disparagement caused Plaintiff to suffer and incur special damages, including loss of income and business and out-of-pocket expenses in the amount of $10,000,000.00 or such other amount as is determined by the Jury.

### COUNT III – DECEPTIVE AND UNFAIR TRADE PRACTICES

35. Plaintiff restates paragraphs 1 through 34 of this Complaint and incorporates them herein by reference.

36. Daily Beast's publication, republication and widespread dissemination of falsehoods about Plaintiff constitutes unconscionable acts or practices and unfair or deceptive acts or practices in the conduct of a trade or commerce. Daily Beast's actions violate Fla. Stat. § 501.204 and are unlawful.

37. Daily Beast willfully used methods, acts, or practices declared unlawful under Fla. Stat. § 501.204.

38. Plaintiff suffered a loss as a result of acts or practices that violate Fla. Stat. § 501.204.

39. Plaintiff brings this action against Daily Beast pursuant to Fla. Stat. § 501-211 to recover to actual damages, plus attorney's fees and court costs, in the amount of $10,000,000.00 or such other amount as is determined by the Jury.

Plaintiff alleges the foregoing based upon personal knowledge, public statements of others, and records in his possession. Plaintiff believes that substantial additional evidentiary support, which is in the exclusive possession of Daily Beast, Markay, their sources (if any), and their agents and other third-parties, will exist for the allegations and claims set forth above after a reasonable opportunity for discovery.

Plaintiff reserves the right to amend this Complaint upon discovery of additional instances of the Defendant's defamation and wrongdoing.

## CONCLUSION AND REQUEST FOR RELIEF

WHEREFORE, Dan Bongino respectfully requests the Court to enter Judgment against Daily Beast as follows:

A.  Compensatory damages in the amount of $10,000,000.00;

B.  Punitive damages in the amount of $5,000,000.00 as a result of Daily Beast's specific intent to harm Plaintiff and the actual harm inflicted on Plaintiff;

C.  Prejudgment interest on the principal sum awarded to Plaintiff by the Jury from December 10, 2018 to the date of Judgment at the maximum rate allowed by law;

D.  Postjudgment interest at the maximum rate allowed by Florida law;

E.  Costs and such other relief as is just and proper.

## TRIAL BY JURY IS DEMANDED

DATED:      December 10, 2019

DAN BONGINO

By: */s/ Robert C. Buschel*
Robert C. Buschel, Esq.
Florida Bar No. 0063436
BUSCHEL GIBBONS, P.A.
One Financial Plaza
100 S.E. Third Avenue, Suite 1300
Fort Lauderdale, Florida 33394
Tele: (954) 530-5301
**Buschel@BGlaw-pa.com**

*Counsel for the Plaintiff*

Steven S. Biss (VSB # 32972)
300 West Main Street, Suite 102
Charlottesville, Virginia 22903
Telephone:   (804) 501-8272
Facsimile:    (202) 318-4098
Email:          **stevenbiss@earthlink.net**

*Counsel for the Plaintiff*
*(Application for Admission Pro Hac Vice*
   *To be Filed)*

18