**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**Case No.: 19-cv-14472-JEM**

DAN BONGINO

   Plaintiff,

vs.

THE DAILY BEAST COMPANY, LLC

   Defendant.
_____/

### DEFENDANT THE DAILY BEAST COMPANY LLC'S MOTION TO DISMISS AND INCORPORATED MEMORANDUM OF LAW

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendant The Daily Beast Company, LLC ("The Daily Beast") respectfully moves to dismiss Plaintiff's Complaint, Dkt. 1 ("Compl."), for failure to state a claim, and further seeks recovery of reasonable attorneys' fees and costs under Florida's anti-SLAPP law, Fla. Stat. § 768.295.

### INTRODUCTION

Plaintiff's case fails because it runs afoul of two clear and well-established rules: (i) a Florida plaintiff must give statutorily required notice before commencing a defamation action against the media, and (ii) "the mere statement of discharge from employment does not constitute libel." *Davis v. Ross*, 754 F.2d 80, 84 (2d Cir. 1985). There is no question that Plaintiff did not give The Daily Beast five business days' pre-suit notice of his claim as required by Florida law. And Plaintiff sues over a news article that he says reported he was "fired" by the National Rifle Association's online media arm. But reporting that someone was fired is not defamatory – and, in any event, the article does not even say that. Instead, it makes clear that Plaintiff was dropped by NRATV for economic reasons, something that even he does not claim is actionable.

Plaintiff's ancillary claims for commercial disparagement and violation of the Florida Deceptive and Unfair Trade Practices Act must also be dismissed. Not only are they duplicative of his failed defamation claim and therefore barred by Florida's single action rule, but Plaintiff fails to plausibly allege the elements of either claim.

Because this lawsuit lacks merit and seeks to hold The Daily Beast liable for its news reporting, it violates Florida's anti-SLAPP statute. The Daily Beast is thus entitled to recover its reasonable attorneys' fees and costs.

## FACTUAL BACKGROUND

### A. The Parties

Plaintiff is a former Secret Service agent. Compl. ¶ 5. He is now "an outspoken supporter of President Donald Trump" who hosts a podcast and is "a regular contributor on Fox News." *Id*. Prior to late 2018, Plaintiff also hosted a show called *We Stand* on NRATV, the online media arm of the National Rifle Association. *Id*. ¶ 18. Plaintiff concedes that he is a public figure for purposes of defamation law. Dkt. 12 ¶ 7.

The Daily Beast is a leading online media company that publishes news and analysis through its website www.thedailybeast.com. Compl. ¶ 7.

### B. The Article

As pled in the Complaint, on December 10, 2018, The Daily Beast published an article by reporter Lachlan Markay entitled *Dan Bongino out at NRATV – BONGI-NO-MORE* (the "Article"). *Id*. ¶ 2; Ex. 1 to this motion.[1] The Article's sub-headline reads "Trump loves the guy. But the gun rights group is downsizing its media operation and the show appears to be a casualty of those plans." *Id*. at 1. The Article goes on to report that "[t]he National Rifle Association's media arm has dropped pro-Trump firebrand Dan Bongino from its lineup of conservative commentators, two sources with knowledge of the decision told The Daily Beast." *Id*. It notes that Plaintiff had removed "NRATV host" from his Twitter biography the previous weekend, and that Fox News had referred to him several weeks earlier as a "Former NRA Contributor." *Id*. at 2.

The Article further reports that the NRA and Bongino did not respond to requests for comment before publication. *Id.* After the Article was published, however, The Daily Beast updated it to add subsequent statements from Bongino and NRATV. The updated version of the Article reports that Plaintiff "subsequently confirmed [on his podcast] that 'We Stand' is, in fact, ending, but suggested that the decision not to renew the show was his, not the network's – a

---

[1] The text of the Article itself is admissible on this motion because it is incorporated by reference in the Complaint and is integral to Plaintiff's allegations. *See, e.g., Horsley v. Feldt*, 304 F.3d 1125, 1134-35 (11th Cir. 2002).

2

characterization questioned by one source familiar with the organization's decision." *Id*. The update further reports that NRATV "released a statement saying the network 'made every attempt to retain [Bongino] in 2019,' but did not elaborate on the negotiations." *Id*.

        **C.**        **This Lawsuit**

Plaintiff alleges that he served The Daily Beast with notice of his intention to sue over the Article on Thursday, December 5, 2019. Compl. ¶ 20. He then filed this lawsuit the following Tuesday, December 10, 2019, claiming that the Article falsely accused him of having "been fired by NRATV." Compl. ¶ 16. His Complaint alleges three counts: defamation, commercial disparagement, and violation of the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.204. Plaintiff claims $10,000,000 in compensatory damages and $5,000,000 in punitive damages, along with costs and interest.

This motion follows.

## ARGUMENT

This Court should dismiss Plaintiff's Complaint. To survive a motion to dismiss under Rule 12(b)(6), a complaint must allege sufficient facts to state a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. This "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A court may therefore dismiss a complaint under Rule 12(b)(6) "when, on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action." *Allen v. USAA Cas. Ins. Co.*, 790 F.3d 1274, 1278 (11th Cir. 2015) (citation omitted).

Because defamation cases implicate the exercise of free speech, both federal and Florida courts stress the prominent function courts play in such cases and favor the early dismissal of untenable claims. *See Michel v. NYP Holdings, Inc.*, 816 F.3d 686, 702 (11th Cir. 2016) ("[T]here is a powerful interest in ensuring that free speech is not unduly burdened by the necessity of defending against expensive yet groundless litigation.") Pretrial disposition is especially appropriate in defamation cases because of the "chilling effect" these cases have on First Amendment rights. *Karp v. Miami Herald Publ'g Co.*, 359 So. 2d 580, 581 (Fla. 3d DCA 1978) (per curiam).

3

This case must be dismissed for a number of reasons. Plaintiff's defamation claim is barred by his failure to comply with Florida's pre-suit notice requirement. It also fails because the Article is not defamatory: even if Plaintiff were correct that the Article suggests he was "fired," courts have held for decades that such an allegation is not actionable. And, in any event, no reasonable reader would understand the Article to suggest Plaintiff was fired because the Article is clear on its face that NRATV and Plaintiff ended their relationship for economic reasons. Plaintiff's claims for commercial disparagement and unfair trade practices must also be dismissed. Not only are these ancillary claims duplicative of Plaintiff's meritless defamation claim, but they fail on their own terms as well.

## I. PLAINTIFF CANNOT STATE A CLAIM FOR DEFAMATION

### A. Plaintiff failed to comply with Florida Statutes § 770.01

First, this Court should dismiss the Complaint because Plaintiff did not comply with the statutory pre-suit notice requirement. In Florida, a plaintiff suing for libel "in a newspaper, periodical, or other medium"[2] must serve notice in writing at least five business days before commencing the lawsuit, "specifying the article or broadcast and the statements therein which he or she alleges to be defamatory." Fla. Stat. § 770.01; *Canonico v. Callaway*, 26 So.3d 53, 55-56 (Fla. 2d DCA 2010). This provision "is designed to allow a defendant the opportunity to be put on notice so as to take necessary steps to mitigate potential damages and perhaps avoid precisely the type of litigation now before the Court." *Nelson v. Associated Press, Inc.*, 667 F. Supp. 1468, 1475 (S.D. Fla. 1987). Because compliance with Section 770.01 is "a jurisdictional condition precedent to the right to maintain the action," *Davies v. Bossert*, 449 So. 2d 418, 419 (Fla. 3d DCA 1984), a plaintiff who fails to comply may not simply cure that defect by amending his complaint. *Orlando Sports Stadium, Inc. v. Sentinel Star Co.*, 316 So. 2d 607, 610 (Fla. 4th DCA 1975) (plaintiff should not "be permitted to cure the defect of non-existence of a cause of action when suit was begun, by amendment of his pleadings to cover subsequently accruing rights") (citation omitted). Failure to comply with the statute instead "requires dismissal of the complaint for failure to state a cause of action." *Mancini v. Personalized Air Conditioning & Heating, Inc.*, 702 So. 2d 1376, 1377 (Fla. 4th DCA 1997).

---

[2] The notice requirement applies to online media. *E.g., Plant Food Sys., Inc. v. Irey*, 165 So. 3d 859, 861 (Fla. 5th DCA 2015); *Tobinick v. Novella*, 2015 WL 1191267, at *8-*9 (S.D. Fla. Mar. 16, 2015).

4

The statute requires that notice be served at least five *business* days before the lawsuit is commenced. *Canonico*, 26 So.3d at 55-56 (dismissing complaint filed six days after service of notice, because two of those days were on a weekend). Here, Plaintiff alleges that he served his pre-suit notice pursuant to Section 770.01 on Thursday, December 5, 2019. Compl. ¶ 20. He then filed this lawsuit on Tuesday, December 10 – only three business days later. That alone requires dismissal of this case.

Furthermore, Plaintiff's allegation that he served his pre-suit notice on December 5 is not only legally insufficient, but it also appears to be false: Plaintiff's notice letter, which is incorporated by reference into the Complaint (*see* Compl. ¶ 20), is postmarked *December 9*. *See* Ex. 2 to this motion. The Daily Beast's agent for service of process did not receive the letter until December 12, *id.* – two days *after* Plaintiff commenced this suit. Such "post-suit notice is meaningless, both in concept and in practice." *Tobinick*, 2015 WL 1191267, at *7.

Because Plaintiff has failed to comply with both the letter and the spirit of the pre-suit notice requirement, his defamation claim must be dismissed.

### B.     The Article is not defamatory

Plaintiff's defamation claim is also deficient on the merits, because the Article does not defame him. The tort of defamation requires a plaintiff to establish that the statement at issue is defamatory – that the words in question "charge a person with an infamous crime or tend to subject one to hatred, distrust, ridicule, contempt or disgrace, or tend to injure one in one's business or profession." *Rubin v. U.S. News & World Report, Inc.*, 271 F.3d 1305, 1306 (11th Cir. 2001).

Here, Plaintiff alleges that "[t]he defamatory gist of the Daily Beast Article, and the way it was universally understood by viewers, was that Plaintiff had been fired by NRATV." Compl. ¶ 16. While The Daily Beast disagrees, as discussed *infra*, that the Article has such a sting, even if it did, the Complaint must still be dismissed as a matter of law. Under Florida law, "the statement that a person was 'fired' from his employment, without more, is not defamatory. The right of an employer to terminate an employee's employment is inherent in the employment relationship. The exercise of that right does not necessarily impute wrongdoing to the employee." *Burnham v. Palm Beach Newspapers, Inc.*, 1993 BL 150, at *2 (Fla. Cir. Ct. June 25, 1993) (attached as Exhibit 3 to this motion).

*Burnham* is consistent with more than six decades of authority from across the country recognizing that it is not defamatory to report that a person has been "fired," "terminated," or

5

"discharged," even if that turns out not to be true.[3] "The mere fact of one's removal from office carries no imputation of dishonesty or lack of professional capacity. It is only when the publication contains an insinuation that the dismissal was for some misconduct that it becomes defamatory." *Nichols v. Item Publishers*, *Inc.*, 309 N.Y. 596, 601-02 (1956) (internal citation omitted); *see, e.g., Davis*, 754 F.2d at 84 ("[T]he mere statement of discharge from employment does not constitute libel."); *Jack's Cookie Co. v. Brooks*, 227 F.2d 935, 937 (4th Cir. 1955) (letter stating that plaintiff was "no longer the sales representative of Jack's Cookie Company" and that this was "best for the company, its distributors, representatives and customers" was not defamatory as a matter of law because it "could not fairly be interpreted as charging [plaintiff] either with incompetence or dishonesty"); *Elias v. Youngken*, 493 A.2d 158, 162 (R.I. 1985) ("No injury to reputation can accrue merely by the bare statement that an employee has been terminated. This observation comports with the weight of authority as expressed in various jurisdictions that have considered cases of this nature."); *Kling v. Lyons,* 186 N.E.2d 186, 187-88 (Mass. 1962) ("The plaintiff rightly concedes that the publication is not reasonably capable of any defamatory meaning; and that to report merely that a person has resigned his position, or that his employment has terminated, is not defamatory."); *Pan-Am Sys., Inc. v. Hardenbergh*, 871 F. Supp. 2d 6, 16 (D. Me. 2012) ("Maine law provides that a statement that an individual is fired, without providing defamatory reasons for the firing, is not defamatory.") (citing *Picard v. Brennan*, 307 A.2d 833, 835 (Me. 1973)); *Huard v. Town of Allenstown*, 2011 WL 540766, at *5 (D.N.H. Feb. 8, 2011) ("Courts have generally held that 'the mere statement of discharge from employment does not constitute' defamation, unless 'the publication contains an insinuation that the discharge was for some misconduct.'") (citation omitted); *Klein v. Victor*, 903 F. Supp. 1327, 1335-36 (E.D. Mo. 1995) ("Even assuming that the statement is false, and that plaintiff was not actually terminated, that statement does not necessarily impute a want of knowledge, skill, capacity or fitness to perform, nor does it impute fraud, want of integrity or misconduct … The mere statement that someone has been terminated from employment is not in and of itself defamatory.").[4]

---

[3] The Daily Beast disputes that anything in the Article is materially false. However, for purposes of this motion only, it assumes the truth of the factual allegations in the Complaint.

[4] Although the Article in this case certainly did not state or suggest that Plaintiff was fired for cause or poor performance, even an explicit statement to that effect is not defamatory unless it is accompanied by specific details of misconduct. *See, e.g., Hogan v. Winder*, 762 F.3d 1096, 1106-07 (10th Cir. 2014) (news article's claim that plaintiff's contract "was not renewed…due to

6

This rule accords with basic common sense: readers understand that "[a]n employee may be discharged for any one of a multitude of reasons unrelated to his honesty, integrity or occupational skill, or indeed for no reason at all," meaning that "it is the reason for discharge rather than the discharge alone" that can make a statement defamatory. *Pan-Am Sys.*, 871 F. Supp. 2d at 16 (quoting *Picard*, 307 A.2d at 835).

In *Estepp v. Johnson County Newspapers*, for instance, the plaintiff sued over newspaper articles that said he "was removed from" and "was relieved of" his job as president and general manager of an electric cooperative. 578 S.W.3d 740, 742-43 (Ky. Ct. App. 2019). As in this case, the plaintiff claimed that he had actually resigned voluntarily. *Id.* at 743. In affirming dismissal of the case, the court cited a long line of case law and wrote:

> We agree with our sister jurisdictions that a mere statement of discharge from employment, whether it be termed "terminated," "removed," "discharged for cause" or "fired," even if untrue, is not *per se* defamatory as compared to stating that an employee made a voluntary decision to leave; these are distinctions without a difference.

*Id.* at 744. "Regardless of whether Estepp chose to resign or was terminated," the court went on to hold, "that is not actionable because even reporting inaccurately that someone was fired is not defamatory *per se* as it does not impute unfitness for a particular profession." *Id.* at 746.

Plaintiff's defamation claim here fails for the very same reason. Any suggestion that NRATV, rather than Plaintiff, made the decision to sever their relationship would not be defamatory because "these are distinctions without a difference." *Id.* at 744. What matters is that Plaintiff cannot, and does not, allege that the Article "contains an insinuation that the dismissal was for some misconduct." *Nichols*, 309 N.Y. at 601. As the Complaint concedes, all the Article says is that NRATV "dropped pro-Trump firebrand Dan Bongino from its lineup of conservative commentators." *See* Compl. ¶ 3. As a result, here, as in *Estepp*, Plaintiff's complaint should be dismissed because the Article is not defamatory as to Plaintiff.

---

'performance issues'" was "simply too nonspecific to sustain a defamatory meaning"); *Burch v. Coca-Cola Co.*, 119 F.3d 305, 325 (5th Cir. 1997) (the "statement that an employee was fired for reasons relating 'solely to work performance' was not defamatory because it was nonspecific") (citing *Einhorn v. LaChance,* 823 S.W.2d 405, 410-11 (Tex. App. 1992)); *Charney v. Standard Gen., L.P.*, 10 Cal. App. 5th 149, 158 (2017) ("Because the press release does not articulate *why* Charney was terminated, Charney's allegation that it falsely states he was terminated for 'cause' does not constitute an actionable defamation.").

7

### C. The Article does not say Plaintiff was fired

In any event, even if the mere statement or insinuation that Plaintiff was fired, without more, were capable of a defamatory meaning (which it is not), the Article still would not be actionable because it does not convey that implication.

It is the role of the court to determine whether "the statement at issue is reasonably capable of a defamatory interpretation" as a matter of law. *Keller v. Miami Herald Publ'g Co.*, 778 F.2d 711, 714-15 (11th Cir. 1985). If "the court finds that 'a communication could not possibly have a defamatory or harmful effect, the court is justified in dismissing the complaint for failure to state a cause of action.'" *Rubin*, 271 F.3d at 1306; *see also, e.g., Spilfogel v. Fox Broad. Co.*, 2010 WL 11504189, at *4 (S.D. Fla. May 4, 2010) (granting motion to dismiss because television segment at issue "could not possibly have a defamatory meaning or harmful effect, and therefore, the claim fails as a matter of law"), *aff'd*, 433 F. App'x 724 (11th Cir. 2011).

The Court must consider the publication "in its totality," rather than focus on "a particular phrase or sentence." *Byrd v. Hustler Magazine, Inc.*, 433 So. 2d 593, 595 (Fla. 4th DCA 1983) (citation omitted); *see also Brown v. Tallahassee Democrat, Inc.*, 440 So. 2d 588, 589 (Fla. 1st DCA 1983) ("It is sound principle that an allegedly defamatory publication must be considered in its entirety rather than with an eye constrained to the objectionable feature alone."). The key question is "how a reasonable and common mind would understand the statements," and the court "should not give the statements a tortured interpretation." *Schiller v. Viacom, Inc.*, 2016 WL 9280239, at *8 (S.D. Fla. Apr. 4, 2016); *see also Byrd*, 433 So. 2d at 595 ("[T]he statement should be considered in its natural sense without a forced or strained construction.").

Here, the entire premise of Plaintiff's defamation claim – that "the defamatory gist of the Daily Beast Article … was that Plaintiff had been fired by NRATV," Compl. ¶ 16 – relies on exactly the sort of "tortured interpretation" of the Article that courts reject. *See Schiller*, 2016 WL 9280239, at *8. The Article actually never says anything about Plaintiff getting fired. The very beginning of the Article makes it clear that NRATV dropped Plaintiff's show for economic reasons: "the gun rights group is downsizing its media operation and *his show appears to be a casualty of those plans*." Ex. 1 at 1 (emphasis added); *see also id.* at 2 ("Bongino's NRATV show was one of a stable of political commentary programs launched by the gun rights group following Trump's election last year. But the channel, a digital-only streaming network, has recently

downsized. Late last month, NRATV laid off a number of employees…"). Even Plaintiff does not claim that it is defamatory to report that he was a victim of corporate "downsizing."

Because the Article is not reasonably capable of defamatory meaning, Plaintiff's defamation claim must be dismissed.

## II. PLAINTIFF'S TAG-ALONG CLAIMS ALSO FAIL

Plaintiff also asserts claims for commercial disparagement (a tort also known as injurious falsehood or trade libel, *see Stenograph, LLC v. Advantage Software, Inc.*, 2006 WL 8433176, at *14 (S.D. Fla. Nov. 30, 2006)) and for violation of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. § 501.204. These claims fail as well, both because they are duplicative of Plaintiff's defamation claim and because Plaintiff cannot satisfy the elements of either cause of action.

### A. Both claims are barred by the single action rule

Under Florida's "single action rule," claims premised on allegedly defamatory statements must be brought as defamation claims and not as separate tort claims. The rule provides that "a single publication gives rise to a single cause of action," and requires a court to "dismiss concurrent counts for related torts based on the same publication and underlying facts as the failed defamation count." *Klayman v. Judicial Watch, Inc.*, 22 F. Supp. 3d 1240, 1255-56 (S.D. Fla. 2014) (citation omitted); *see, e.g., Fridovich v. Fridovich*, 598 So. 2d 65, 69-70 (Fla. 1992) (single action rule precludes interference claims premised upon allegedly defamatory statements); *Ovadia v. Bloom*, 756 So. 2d 137, 140-41 (Fla. 3d DCA 2000) (single action rule "does *not* permit multiple actions to be maintained when they arise from the same publication upon which a failed defamation claim is based") (emphasis in original). The purpose of the rule is to prevent plaintiffs from using other causes of action to evade the doctrinal and other limitations imposed upon defamation actions, which reflect a careful balance between the societal interest in freedom of speech and the interests of potential plaintiffs. *See Fridovich*, 598 So. 2d at 69-70 (a plaintiff cannot "make an end-run around" defamation defenses by "simply renaming the cause of action and repleading the same facts"); *Klayman*, 22 F. Supp. 3d at 1255-56 ("The rule is designed to prevent plaintiffs from circumventing a valid defense to defamation by recasting essentially the same facts into several causes of action all meant to compensate for the same harm.") (citation omitted).

Florida courts have specifically rejected attempts to use ancillary causes of action to circumvent the pre-suit notice requirement of Fla. Stat. § 770.01 and the defamatory-meaning

9

requirement.  *See Jews For Jesus, Inc. v. Rapp*, 997 So. 2d 1098, 1113-14 (Fla. 2008) (refusing to adopt the tort of false light, which allows a plaintiff to recover for "highly offensive" statements that are "not necessarily defamatory," because of "First Amendment concerns"); *Orlando Sports Stadium, Inc. v. Sentinel Star Co.*, 316 So. 2d 607, 609 (Fla. 4th DCA 1975) (dismissing tortious interference claim because "[a] contrary result might very well enable plaintiffs in libel to circumvent the notice requirements of Fla. Stat. 770.01 by the simple expedient of re-describing the libel action to fit a different category of intentional wrong").

The single action rule therefore bars commercial disparagement/injurious falsehood and FDUTPA claims that seek redress for the same underlying conduct as a failed defamation claim. *See, e.g., XTEC, Inc. v. Hembree Consulting Servs., Inc.*, 2014 WL 12729173, at *4 (S.D. Fla. Aug. 1, 2014) (dismissing commercial disparagement and FDUTPA claims that were "premised on the same underlying conduct" as defamation claim); *Kamau v. Slate*, 2012 WL 5390001, at *7 (N.D. Fla. Oct. 1, 2012), *R & R adopted*, 2012 WL 5389836 (N.D. Fla. Nov. 5, 2012) (dismissing injurious falsehood claim under single action rule).

Here, Plaintiff's commercial disparagement and FDUTPA claims are based on exactly the same set of operative facts as his defamation claim: all three claims arise from the very same words in the Article, and all are based on the allegation that the Article falsely reported that Plaintiff had been "fired."  In fact, the key allegations in the Complaint in support of the commercial disparagement and FDUTPA claims are taken nearly verbatim from the defamation claim. *Compare* Compl. ¶ 23 (defamation claim based on the allegation that "Daily Beast made and published to third-parties, including subscribers, viewers, and followers in Florida, false factual statements, which are detailed verbatim above, of or concerning Plaintiff") *with* Compl. ¶ 30 (commercial disparagement claim based on allegation that "Daily Beast published and disseminated widespread false and disparaging information about Plaintiff, which is detailed verbatim above") *and* Compl. ¶ 36 (FDUTPA claim based on "Daily Beast's publication, republication and widespread dissemination of falsehoods about Plaintiff").  Plaintiff therefore cannot use these duplicative claims to avoid his failure to follow Florida's notice statute and his inability to satisfy the requirements of defamation law.  These claims are barred by the single action rule, and must be dismissed.

### B.      Plaintiff's commercial disparagement claim is also barred by his failure to allege special damages

Perhaps the clearest sign that Plaintiff's commercial disparagement claim is nothing more than a rebranded defamation claim, however, is that he makes no serious attempt to plead the defining element of a commercial disparagement claim: special damages. *Salit v. Ruden, McClosky, Smith, Schuster & Russell, P.A.*, 742 So. 2d 381, 386-88 (Fla. 4th DCA 1999) (noting that "the gist of the tort of injurious falsehood is the 'intentional interference with another's economic relations'" and that special damages are a "crucial element" that the plaintiff must "specifically plead") (citation omitted).  This provides another, independent, reason why Plaintiff's commercial disparagement claim must be dismissed.

Special damages are "actual, out of pocket losses which must be proven by specific evidence as to the time, cause and amount." *ADT LLC v. Vivint, Inc.*, 2017 WL 5640725, at *6 (S.D. Fla. Aug. 3, 2017) (citation omitted).  They "are distinct from general damages, which 'encompass more customary harms inflicted by a defamatory falsehood, such as impairment of reputation and standing in the community.'" *Stenograph,* 2006 WL 8433176, at *14 (citation omitted).  To state a claim for commercial disparagement, a plaintiff must do more than "simply alleg[e] that statements were prejudicial to [his] business and caused pecuniary harm." *Nat'l Numismatic Certification, LLC v. eBay, Inc.*, 2008 WL 2704404, at *20 (M.D. Fla. July 8, 2008) (granting motion to dismiss for failure to adequately allege special damages); *see* Fed. R. Civ. P. 9(g) ("If an item of special damage is claimed, it must be specifically stated."); *KLS Martin, Inc. v. Med. Medling, Inc.*, 2018 WL 8139133, at 9 (M.D. Fla. Dec. 17, 2018) (dismissing trade libel claim because plaintiff "has not alleged special damages.  It has only referenced unnamed 'customers,' without stating a diminution in business.  To sustain its claim of trade libel KLS must allege facts demonstrating a difference in business volume resulting from the alleged libel."); *ADT LLC*, 2017 WL 5640725, at *7 (dismissing trade slander claim for failure to "satisfy the particularity requirement for pleading special damages.").  Instead, "it is necessary for the plaintiff to allege *either* the loss of particular customers by name," or provide a host of detail supporting a claim for "general diminution in its business," including "facts showing an established business, the amount of sales for a substantial period preceding the publication, and the amount of sales subsequent to the publication, facts showing that such loss in sales were the natural and probable result of such publication, and facts showing the plaintiff could not allege the names of particular

11

customers who withdrew or withheld their custom." *Nat'l Numismatic Certification*, 2008 WL 2704404, at *19.

The prayer for relief in the Complaint here does not even mention special damages, and all Plaintiff pleads in the body of the Complaint is that "Daily Beast's commercial disparagement caused Plaintiff to suffer and incur special damages, including loss of income and business and out-of-pocket expenses in the amount of $10,000,000.00 or such other amount as is determined by the Jury." Compl. ¶ 34. This one-sentence allegation does not remotely approach satisfaction of the rigorous pleading standard set forth above; it does not identify any lost business opportunities, does not quantify Plaintiff's business income either before or after the Article was published, does not specify what "out-of-pocket expenses" Plaintiff has allegedly incurred, and provides no facts about lost sales or lost customers. This is exactly the sort of "threadbare recital[] of the elements of a cause of action, supported by mere conclusory statements" that cannot survive a motion to dismiss. *Iqbal*, 556 U.S. at 678. The claim for commercial disparagement must therefore be dismissed for this reason as well.

### C. Because the Article is not commercial speech, Plaintiff cannot state a claim for violation of FDUTPA

Plaintiff fares no better in his attempt to plead the elements of an FDUTPA claim. For that statute to apply, the act or practice at issue must have taken place "in the conduct of any trade or commerce," which is defined as "the advertising, soliciting, providing, offering, or distributing" of goods, services, property, "or any other article, commodity, or thing of value." Fla. Stat. §§ 501.203(8), 501.204(1); *see, e.g., Economakis v. Butler & Hosch, P.A.*, 2014 WL 820623, at *3 (M.D. Fla. Mar. 3, 2014) (granting motion to dismiss because "no 'trade or commerce' has been alleged in the Complaint"). Thus, where the act or practice in question is the publication of information, the statute only applies to *commercial* speech, which is defined as "expression related solely to the economic interests of the speaker and its audience." *Tobinick v. Novella*, 848 F.3d 935, 950 (11th Cir. 2017) (quoting *Central Hudson Gas & Elec. Corp. v. Pub Serv. Comm'n of N.Y.*, 447 U.S. 557, 561 (1980)) (defining commercial speech in context of Lanham Act claim); *see Gorran v. Atkins Nutritionals, Inc.*, 279 F. App'x 40, 42 (2d Cir. 2008) (Florida law) (affirming dismissal of FDUTPA claim arising out of book and website about Atkins diet because "the content on which Gorran seeks to premise liability is noncommercial speech barring his claim under FDUTPA."); *Incarcerated Entm't, LLC v. Warner Bros. Pictures*, 261 F. Supp. 3d 1220, 1227-29

(S.D. Fla. 2017) (like Lanham Act, FDUPTA requires showing that speech at issue was commercial speech); *Global Tech Led, LLC v. Hilumz Int'l Corp.*, 2017 WL 588669, at *9 (M.D. Fla. Feb. 14, 2017) (plaintiff satisfied "trade or commerce" requirement by adequately alleging that statements at issue "constitute commercial speech").

The Article at issue here is classic non-commercial speech. It does not propose any commercial transaction or promote a product or service, but seeks to inform readers about a newsworthy event: Plaintiff's departure from NRATV. *See Tobinick*, 848 F.3d at 950 (online articles were non-commercial speech outside scope of Lanham Act because they "do not propose a commercial transaction," but instead "communicate information, express opinion, and recite grievances") (citation and internal alterations omitted). Plaintiff does not seriously contend otherwise, asserting only that The Daily Beast sells subscriptions and advertising. Compl. ¶ 7. The law is clear: neither of these commonplace activities of news organizations turns news reporting into commercial speech. *Tobinick*, 848 F.3d at 952 ("[N]either the placement of the articles next to revenue-generating advertising nor the ability of a reader to pay for a website subscription would be sufficient in this case to show a liability-causing economic motivation for Dr. Novella's informative articles.…[M]agazines and newspapers often have commercial purposes, but those purposes do not convert the individual articles within these editorial sources into commercial speech."). Because the Article is not commercial speech, Plaintiff cannot satisfy the elements of FDUPTA, and this claim too must be dismissed.

### III. THE DAILY BEAST IS ENTITLED TO ATTORNEYS' FEES AND COSTS UNDER FLORIDA'S ANTI-SLAPP LAW

Finally, The Daily Beast is entitled to recover its attorneys' fees and costs under the Florida anti-SLAPP law. Florida enacted its anti-SLAPP law in order "to protect the right in Florida to exercise the rights of free speech in connection with public issues," Fla. Stat. § 768.295(1), and to "shield[] individuals and entities from the often-crushing expense of lawsuits" that lack merit. *Lam v. Univision Commc'ns, Inc.*, 2019 WL 6830882, at *2 (Fla. Cir. Ct. Nov. 2, 2019). The statute prohibits any person from filing a lawsuit (a) that is "without merit" and (b) because the defendant "has exercised the constitutional right of free speech in connection with a public issue." Fla. Stat. § 768.295(3). The statute defines "free speech in connection with a public issue" broadly to include "any written or oral statement that is protected under applicable law," and "is made in or in connection with a play, movie, television program, radio broadcast, audiovisual work, book,

13

magazine article, musical work, news report, or other similar work." Fla. Stat. § 768.295(2)(a). It provides that "[t]he Court shall award the prevailing party reasonable attorney fees and costs incurred in connection with a claim that an action was filed in violation of this section." Fla. Stat. § 768.295(4).[5]

This lawsuit is exactly what the anti-SLAPP law prohibits. The Complaint appears to be more interested in disparaging The Daily Beast than pleading a cause of action. *See* Compl. ¶ 1 ("Daily Beast is a digital assassin owned and controlled by billionaire Clinton-devotees"); *Id*. ¶ 8 ("Daily Beast promotes its left-wing ideology and agendas via its website and social media."). Because Plaintiff fails to state a claim for the reasons set out above, his lawsuit is "without merit." *See, e.g., Boling v. WFTV, LLC*, 2018 WL 2336159, at *2 (Fla. Cir. Ct. Feb. 28, 2018) (defamation suit filed without proper pre-suit notice was "without merit" for purposes of anti-SLAPP law), *aff'd*, 274 So.3d 392 (Table) (Fla. 5th DCA 2019) (per curiam); *Parekh v. CBS Corp.*, No. 6:18-cv-466, Dkt. 104, slip op. at 10 (M.D. Fla. Jan. 9, 2019) (awarding fees under anti-SLAPP law following successful motion to dismiss for lack of defamatory meaning) (attached as Exhibit 4 to this motion). And the Article, which discusses a public figure's media career and the struggles of the NRA's online media arm, clearly constitutes "free speech in connection with a public issue," because it is a "news report" that is "protected under applicable law" for the reasons outlined above. Fla. Stat. § 768.295(1); *see Rosenthal v. Council on Am.-Islamic Relations, Fla., Inc.*, 2017 BL 409563, at *3-*4 (Fla. Cir. Ct. Nov. 8, 2017) (noting that Florida anti-SLAPP law covers "any protected statement made in a news report") (attached as Exhibit 5 to this motion). In these

---

[5] The anti-SLAPP law's fee-shifting provision applies in federal court. *See, e.g., Parekh v. CBS Corp.*, 2019 WL 2230075 (M.D. Fla. Feb. 14, 2019) (awarding attorneys' fees under anti-SLAPP law), *R & R adopted*, 2019 WL 2225851 (M.D. Fla. Apr. 19, 2019); *Davis v. McKenzie*, 2018 WL 1813897 (S.D. Fla. Jan. 19, 2018) (granting "Motion for Summary Judgment Pursuant to Section 768.295, Florida Statutes (Anti-SLAPP Statute)"). In contrast to the motion-to-strike provision of the Georgia anti-SLAPP law that the Eleventh Circuit held not to apply in federal court in *Carbone v. Cable News Network*, 910 F.3d 1345 (11th Cir. 2018), the fee-shifting rule does not "define[] the conditions under which a court must dismiss a claim before trial for insufficient pleading or proof," *id*. at 1350, or conflict with anything else in the Federal Rules of Civil Procedure. *See Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 259 n.31 (1975) ("[I]n an ordinary diversity case where the state law does not run counter to a valid federal statute or rule of court, and usually it will not, state law denying the right to attorney's fees or giving a right thereto, which reflects a substantial policy of the state, should be followed.").

circumstances, "an award of reasonable attorneys' fees and costs is *mandatory*." *Parekh*, slip op. at 10 (emphasis added).[6]

The Daily Beast is therefore entitled to an award of fees and costs.

## CONCLUSION

For these reasons, The Daily Beast respectfully requests that the Court dismiss Plaintiff's Complaint with prejudice and award The Daily Beast its reasonable attorneys' fees and costs.

## REQUEST FOR HEARING

Pursuant to Local Rule 7.1(b)(2), The Daily Beast respectfully requests oral argument on this motion. Because the motion raises important First Amendment considerations and dispositive issues of law, The Daily Beast believes that oral argument would assist the Court's decision-making process. The Daily Beast estimates that a total of one hour will be required for argument.

Date: January 31, 2020

                                                Respectfully submitted,

                                                /s/ Roy Black
Roy Black
Jared Lopez
Black, Srebnick, Kornspan & Stumpf, P.A.
201 So. Biscayne Boulevard
Miami, Florida 33131
rblack@royblack.com
jlopez@royblack.com

Katherine M. Bolger (*pro hac vice*)
Adam Lazier (*pro hac vice*)
Davis Wright Tremaine LLP
1251 Avenue of the Americas, 21st Floor
New York, New York 10020
katebolger@dwt.com
adamlazier@dwt.com

*Attorneys for Defendant*

---

[6] Any finding by the Court that this action violates the anti-SLAPP law would, of course, be followed by a formal fees motion in accordance with the process established by Local Rule 7.3.

## **CERTIFICATE OF SERVICE**

      I hereby certify that on January 31, 2020, a true and correct copy of the foregoing was served via CM/ECF on all counsel of record.

/s/ Jared Lopez
Jared Lopez

4843-4512-7347v.2 0039893-000034