IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Case No.: 19-cv-14472-JEM

DAN BONGINO

   Plaintiff,

vs.

THE DAILY BEAST COMPANY, LLC

   Defendant.
_____/

**DEFENDANT THE DAILY BEAST COMPANY LLC'S REPLY IN FURTHER
SUPPORT OF ITS MOTION TO DISMISS**

      Plaintiff Dan Bongino's Opposition to The Daily Beast's Motion to Dismiss, Dkt. 19 ("Opp.") does not meaningfully respond to any of the dispositive arguments raised in the Motion. Dkt. 16 ("Mot."). Instead, Plaintiff simply ignores everything that dooms his claim. He ignores case law from Florida's appellate court that conclusively establishes he failed to fulfill the statutory conditions precedent for this lawsuit when he filed it only three business days after allegedly mailing pre-suit notice to The Daily Beast. He ignores language in the Article that explicitly says he was laid off by NRATV for economic reasons, not fired for cause. He makes no serious effort to argue that his ancillary claims for commercial disparagement and Florida Deceptive and Unfair Trade Practices Act (FDUTPA) violations are based on anything other than the very same facts underlying his defamation claim, or that he has adequately pled the elements of either tort. And Plaintiff ignores decades of case law holding that state fee-shifting legislation like the provision of the Florida anti-SLAPP law The Daily Beast invokes here applies in federal court.

      For all these reasons, this Motion should be granted.

## ARGUMENT

### I. PLAINTIFF CANNOT STATE A CLAIM FOR DEFAMATION

#### A. Plaintiff does not dispute that he failed to provide five business days' notice before filing this suit.

First, nothing in Plaintiff's Opposition changes what is clear from the Complaint itself – this case must be dismissed because Plaintiff failed to comply with Fla. Stat. § 770.01's pre-suit notice requirement, which is "a jurisdictional condition precedent to the right to maintain the action." *Davies v. Bossert*, 449 So. 2d 418, 419 (Fla. 3d DCA 1984). Contrary to Plaintiff's claim in his Opposition, Opp. at 6, the Court need not look beyond "the four-corners of the complaint" to resolve this issue. As Plaintiff concedes, his Complaint states that Plaintiff served his pre-suit notice on December 5, 2019 – which was only three business days before he filed this lawsuit on December 10. Compl. ¶ 20 (*see* Opp. at 5).[1]

That is all the Court needs to know in order to dismiss this case. As The Daily Beast pointed out in its Motion, the Florida District Court of Appeal has explicitly held that Fla. Stat. § 770.01 requires not only five days' pre-suit notice, but five *business days*. *Canonico v. Callaway*, 26 So. 3d 53 (Fla. 2d DCA 2010); *see* Mot. at 4-5.

Evidently recognizing this, Plaintiff simply ignores *Canonico* in his Opposition, blithely asserting without citation that "Plaintiff's pre-suit notice was also timely under Rule 1.090 and Florida Rule of Judicial Administration 2.514(a)(1) because it was served by mail five (5) days before Plaintiff commenced this action." Opp. at 6. But that does not change what matters here: two of the "five (5) days" he relies on (Saturday, December 7 and Sunday, December 8) were on the weekend, and therefore do not count.

Plaintiff also appears to argue that the Court may not address his non-compliance with Section 770.01 on a Motion to Dismiss, suggesting that this is "a question properly resolved at the summary judgment stage." Opp. at 6. That too is simply incorrect. A case like this one, where it is clear from the Complaint that the Plaintiff has not complied with the notice requirement, actually "*requires* dismissal of the complaint for failure to state a cause of action."

---

[1] Because the Complaint itself establishes that Plaintiff failed to comply with the notice statute, his argument in the Opposition that his "allegations suffice at the pleading stage of this case," Opp. at 5, does not hold water. *See, e.g.*, *Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1205-06 (11th Cir. 2007) ("Our duty to accept the facts in the complaint as true does not require us to ignore specific factual details of the pleading in favor of general or conclusory allegations.").

*Mancini v. Personalized Air Conditioning & Heating, Inc.*, 702 So. 2d 1376, 1377 (Fla. 4th DCA 1997) (emphasis added).

Because Plaintiff failed to comply with the conditions precedent for bringing this lawsuit, it must be dismissed.

### B. The Article is not defamatory.

Plaintiff's Opposition also cannot change what is clear from the Article itself: no reasonable jury could find that The Daily Beast has defamed him.

As The Daily Beast pointed out in its Motion to Dismiss, it is not defamatory as a matter of law to report that someone was fired, terminated, or discharged – even if that turns out not to be true. *See* Mot. at 5-7 (citing cases). Once again, Plaintiff's response to authority establishing that his case must be dismissed is to ignore it. Plaintiff simply fails to engage with this law, including *Burnham v. Palm Beach Newspapers, Inc.*, in which the Florida court, applying Florida law, held that "the statement that a person was 'fired' from his employment, without more, is not defamatory." 1993 BL 150, at *2 (Fla. Cir. Ct. June 25, 1993) (filed at Dkt. 16-3).

Instead, Plaintiff cites a handful of cases that address a completely different issue – they hold that it may be defamatory to report that someone was fired *if the defendant also specifically claims the firing was for cause or based on misconduct.*[2] *See Burns v. Levy*, 873 F.3d 289, 295 (D.C. Cir. 2017) (cited in Opp. at 8) (noting that communications "all contain the positive declaration that Burns was dismissed for cause"); *No Witness, LLC v. Cumulus Media Partners, LLC*, 2007 WL 4139399, at *1 (N.D. Ga. Nov. 13, 2007) (cited in Opp. at 8) (defendant accompanied claim that plaintiff was fired with claim that he was "a 'retarded child,' and a '***ing ***hole'"); *Abella v. Barringer Resources, Inc.*, 615 A.2d 288, 291 (N.J. Super. Ct.

---

[2] Plaintiff cites only one case in which the defendant did not specify that the plaintiff's firing was for cause or misconduct, *Denny v. Mertz*, 267 N.W.2d 304 (Wis. 1978) and 318 N.W.2d 141 (Wis. 1982) (cited in Opp. at 9). But the Wisconsin Supreme Court itself acknowledged that the result in that case was an outlier, dictated by unique considerations of Wisconsin law. *See Denny*, 267 N.W.2d at 308 ("Mr. Mertz and McGraw-Hill also rely on cases from other jurisdictions holding that it is not defamatory to state that a person has been fired, dismissed or removed from a position without giving a reason for the removal. *Picard v. Brennan*, 307 A.2d 833 (Me. 1973); *Nichols v. Item Publishers*, 309 N.Y. 596, 132 N.E.2d 860 (1956). However, these cases both applied different libel law than what this court has articulated in [*Westby v. Madison Newspapers, Inc.*, 259 N.W.2d 707 (Wis. 1977)] and the cases cited therein."). That may be why *Denny*'s holding on this issue does not appear to have been adopted by a single court outside Wisconsin. It certainly was not followed by the Florida court in *Burnham*.

3

1992) (cited in Opp. at 8) (defendant claimed plaintiff "was terminated for cause"); *Carney v. Mem'l Hosp. & Nursing Home of Greene Cty.*, 64 N.Y.2d 770, 772 (1985) (same) (cited in Opp. at 8-9); *Pattison v. Gulf Bag Co.*, 41 So. 224, 224 (La. 1906) (cited in Opp. at 9) (defendant claimed that plaintiff's daughter's was dismissed because of "not a trivial offense" that "was a good cause … such that she could not be retained in the factory").[3] Here the Article does not say that Plaintiff was dismissed for cause or misconduct. To the contrary, the Article explicitly states that "the gun rights group is downsizing its media operation and [Plaintiff's] show appears to be a casualty of those plans." Dkt. 16-1 at 1.

Therefore, even if the Article does suggest Plaintiff was "fired" – which The Daily Beast strongly denies – it is not defamatory as a matter of law. Plaintiff's defamation claim fails.

### C. The Article does not say that Plaintiff was fired.

In any event, this action must be dismissed regardless of whether it would have been defamatory to report that Plaintiff was "fired" or "fired for cause" – because The Daily Beast did neither of those things. The Article actually reported that Plaintiff was terminated for economic reasons, something that even Plaintiff does not say was defamatory.

Plaintiff's Opposition just doubles down on his attempt to manufacture a cause of action out of a tortured interpretation of the Article. While Plaintiff alleged in his Complaint that the "the defamatory gist of the Daily Beast Article … was that Plaintiff had been fired by NRATV," Compl. ¶ 16, his Opposition goes further and now claims that the Article says not only that NRATV fired him, but that "there was 'cause' for the termination of Plaintiff's contract." Opp. at 7. Plaintiff is unable, of course, to point to anything in the Article that says he was fired for cause (or fired at all). Instead, he claims in a footnote that "Daily Beast falsely insinuates that NRA-TV 'dropped pro-Trump firebrand Dan Bongino' because of his 'quick temper,' 'brash style,' and because he was an 'outspoken defender of President Trump.'" Opp. at 7 n.3.[4]

---

[3] Even this is the minority view – as pointed out in The Daily Beast's Motion, most courts actually hold that allegations a plaintiff was fired for unspecified cause are too vague to be defamatory. Mot. at 6 n.4 (citing cases). For additional cases holding that it is not defamatory to report that a plaintiff was fired for unspecified cause, *see Pilkington v. CHU Ins. Co.*, 2000 WL 33159253, at *5 (E.D. Pa. Feb. 9, 2001); *Skopp v. First Fed. Sav. of Wilmette*, 545 N.E.2d 356, 359 (Ill. App. Ct. 1989); *Hopkins v. MWR Mgmt. Co.*, 2017 WL 2380227, at *17 (N.C. Super. Ct. May 31, 2017); *Terry v. Hubbell*, 167 A.2d 919, 923 (Conn. Super. Ct. 1960).

[4] It is also worth noting that, even if the Article did say this, it would still not be actionable because there is nothing defamatory about having a "quick temper" or "brash style," or being an

4

This cobbled-together collection of out-of-context quotations does not stand up to even a casual reading of the Article. The Article never says that Plaintiff was fired for anything to do with his behavior or political beliefs. In fact, it makes clear that NRATV saw Plaintiff's outspoken behavior as an important part of its "foray into broader political and cultural issues," and that Plaintiff remained a right-wing favorite:

> NRATV represented a foray into broader political and cultural issues for an organization traditionally focused on a single policy issue. Hosts such as Bongino and Dana Loesch have embraced a larger culture-war style of commentary that dovetails with contemporary conservative rhetoric with frequent media criticism and broadsides against professional athletes who kneel during the national anthem.
>
> …
>
> That brash style has earned Bongino the attention of the president himself. "Did you see what Bongino said?" Trump gushed to a confidant after a Bongino segments on Fox News this year. "He's so right, he's just so right about it all. You have to see it."

Dkt. 16-1 at 2-3.

Most importantly, though, as The Daily Beast pointed out in its Motion, the Article explicitly and prominently states that Plaintiff's show was dropped for economic reasons and *not* for cause or misconduct, reporting in its sub-headline that "the gun rights group is downsizing its media operation and his show appears to be a casualty of those plans." *Id*. at 1.

Plaintiff's claim therefore rests on an untenable interpretation of the Article, one that no reasonable jury could adopt. It must be dismissed.

## II.  PLAINTIFF'S COMMERCIAL DISPARAGEMENT AND FDUTPA CLAIMS ALSO FAIL

Plaintiff's halfhearted defense of his commercial disparagement and FDUPTA claims in his Opposition is less than a page long, and, as with his defamation claim, he does not meaningfully address any of The Daily Beast's arguments for dismissal.

*First*, Plaintiff argues that these claims are not barred by the single action rule because "Florida law does not prohibit Plaintiff from alleging separate claims of commercial disparagement and deceptive acts and unfair practices in trade and commerce." Opp. at 10. But Plaintiff neglects to mention a crucial point – such ancillary claims are only permitted "when

---

"outspoken defender of President Trump" – and also because Plaintiff does not claim that any of that is false. *See Picard*, 307 A.2d at 835 ("[I]t it is the reason for discharge rather than the discharge alone" that can make a statement defamatory).

5

they 'are properly pled upon the existence of *independent facts*.'" *Klayman v. Judicial Watch, Inc.*, 22 F. Supp. 3d 1240, 1256-57 (S.D. Fla. 2014) (emphasis added, citation omitted). Plaintiff's own cases confirm this. *See Alvi Armani Med., Inc. v. Hennessey*, 629 F. Supp. 2d 1302, 1304 (S.D. Fla. 2008) (cited in Opp. at 10) (noting that plaintiffs argued that they had "alleged an independent basis for their FDUTPA claim, namely, Defendants' deceptive and misleading conduct, separate and apart from defamatory statements"); *Primerica Fin. Servs., Inc. v. Mitchell*, 48 F. Supp. 2d 1363, 1368 (S.D. Fla. 1999) (cited in Opp. at 10) (declining to dismiss tortious interference claim because plaintiffs "have also pled the other circumstances and facts [beyond a defamation claim] necessary in support of a claim for tortious interference").

Here, Plaintiff does not even try to argue that his commercial disparagement or FDUTPA claims rely on "the existence of independent facts" separate from his defamation claim. Nor can he – his Complaint leaves no doubt that, like his defamation claim, his ancillary claims are based on nothing more than the allegation that the Article falsely reported that he been "fired" by NRATV. *See* Mot. at 10 (citing Complaint). That is exactly what the single action rule prohibits.

*Second*, Plaintiff does not seriously dispute that he has failed to adequately allege special damages in support of his commercial disparagement claim. All he musters in response to this argument is a single sentence asserting without explanation or legal authority that "Plaintiff does allege that he suffered special damages as a result of Daily Beast's disparagement." Opp. at 10 (citing Compl. ¶ 34). Even Plaintiff must know that this misses the point. The Daily Beast did not argue that Plaintiff completely failed to allege special damages, but that his conclusory one-sentence reference to such damages in his Complaint comes nowhere close to measuring up to the standard for pleading special damages set by the Federal Rules of Civil Procedure and the courts. *See* Mot. at 11-12. Plaintiff does not contest *that* point in his Opposition, and it is dispositive of his commercial disparagement claim.

*Third*, Plaintiff also does not dispute that FDUTPA applies only to commercial speech. *See* Mot. at 12-13 (citing *Gorran v. Atkins Nutritionals, Inc.*, 279 F. App'x 40, 42 (2d Cir. 2008) (Florida law)). He argues, however, that the statute nonetheless applies to the Article because "Daily Beast provides goods, services and information on its website for profit to subscribers." Opp. at 10. But he never explains how selling subscriptions or advertising (the only commercial activity identified in the Complaint) turns The Daily Beast's news articles into "expression

6

related solely to the economic interests of the speaker and its audience." *Tobinick v. Novella*, 848 F.3d 935, 950 (11th Cir. 2017) (citation omitted). Plaintiff's inability to cite a single case that supports his position is not surprising, because his argument has been explicitly rejected by the Eleventh Circuit. *Id.* at 952 ("[M]agazines and newspapers often have commercial purposes, but those purposes do not convert the individual articles within these editorial sources into commercial speech."). Because the Article is plainly non-commercial speech, it is not subject to FDUTPA and Plaintiff's claim under that statute must be dismissed.

For all these reasons, Plaintiff's Complaint should be dismissed in its entirety for failure to state a claim.

### III. THE DAILY BEAST IS ENTITLED TO FEES AND COSTS UNDER THE FLORIDA ANTI-SLAPP LAW

Because this lawsuit lacks merit and violates Florida's anti-SLAPP law, Fla. Stat. § 768.295, The Daily Beast is entitled to recover its reasonable fees and costs. Plaintiff's main argument in opposition to this request is to claim that Florida's anti-SLAPP law does not apply in federal court. But the cases he cites provide no support for the notion that this Court may not award fees under the Florida anti-SLAPP law. Plaintiff relies primarily on the Eleventh Circuit's decision in *Carbone v. Cable News Network, Inc.*, 910 F.3d 1345 (11th Cir. 2018). The issue in *Carbone* was whether a federal court could apply the special motion to strike mechanism established by Georgia's anti-SLAPP law in circumstances where dismissal was not warranted under Rules 12 or 56. The Court held that this aspect of the Georgia anti-SLAPP law did not apply in federal court, because it "answers the same question as Rules 8, 12, and 56, but it does so in a way that conflicts with those Rules" by permitting courts to dismiss cases in circumstances not contemplated by Rules 12 or 56. *Id.* at 1350 (citation, internal quotation marks, and brackets omitted). The other two cases Plaintiff cites likewise focus on the applicability of state-law special motion procedures. *See Abbas v. Foreign Policy Grp., LLC*, 783 F.3d 1328, 1333-34 (D.C. Cir. 2014) (D.C. anti-SLAPP law); *Los Lobos Renewable Power, LLC v. Americulture, Inc.*, 885 F.3d 659, 669 (10th Cir. 2018) (New Mexico anti-SLAPP law), *cert. denied*, 139 S. Ct. 591 (2018).[5]

---

[5] The Georgia, D.C., and New Mexico anti-SLAPP laws also contain fee-shifting provisions tied directly to the special motion procedures. Having found that those motion procedures were unavailable in federal court, it followed that the fee-shifting procedures also did not apply. *See Abbas*, 783 F.3d at 1337 n.5; *Los Lobos*, 885 F.3d at 671. As the *Abbas* court specifically

7

But federal courts consider the application of anti-SLAPP laws on a provision-by-provision basis, *see, e.g.*, *Metabolife Int'l, Inc. v. Wornick*, 264 F.3d 832, 845-46 (9th Cir. 2001), and this case does not involve a special motion to strike – The Daily Beast argues that Plaintiff has failed to state a claim under Fed. R. Civ. P. 12(b)(6). *See* Mot. at 3-13. The only section of the anti-SLAPP law at issue here is a garden-variety fee-shifting provision, giving the party who prevails on a claim that that the statute has been violated a right to recover its reasonable fees and costs. Fla. Stat. § 768.295(4) ("[T]he court shall award the prevailing party reasonable attorney fees and costs incurred in connection with a claim that an action was filed in violation of this section."). It does not create a new type of motion, purport to "define[] the conditions under which a court must dismiss a claim before trial for insufficient pleading or proof," or conflict with any other federal statute or rule. *Cf. Carbone*, 910 F.3d at 1350. The Eleventh Circuit has held for decades that state fee-shifting statutes like this one "are unequivocally substantive for *Erie* purposes" and therefore apply in federal court. *Showan v. Pressdee*, 922 F.3d 1211, 1225 (11th Cir. 2019); *see, e.g.*, *Horowitch v. Diamond Aircraft Indus., Inc.*, 645 F.3d 1254, 1259 (11th Cir. 2011) ("[W]e conclude that the FDUPTA and its fee-shifting provision are substantive for *Erie* purposes."); *McMahan v. Toto*, 256 F.3d 1120, 1132 (11th Cir. 2001) (Florida statute allowing for fee-shifting after offer of judgment applied in federal court), *amended on reh'g on other grounds*, 311 F.3d 1077 (11th Cir. 2002); *All Underwriters v. Weisberg*, 222 F.3d 1309, 1311-12 (11th Cir. 2000) (Florida statute providing for fee-shifting in insurance cases applied in federal court); *Tanker Mgmt., Inc. v. Brunson*, 918 F.2d 1524, 1528-29 (11th Cir. 1990) (Florida statute providing for fee-shifting where plaintiff unreasonably rejected settlement offer applied in federal court); *Schilling v. Belcher*, 582 F.2d 995, 1003 (5th Cir. 1978) ("Because this is a diversity case, the validity of the fee award must be tested under Florida law.").

Not surprisingly, therefore, courts have had little difficulty concluding that the fee-shifting provision of the Florida anti-SLAPP law and analogous provisions in other states' anti-SLAPP laws apply in federal court. *Parekh v. CBS Corp.*, 2019 WL 2230075 (M.D. Fla. Feb. 13, 2019) (applying fee-shifting provision of Florida anti-SLAPP law post-*Carbone*), *R. & R. adopted*, 2019 WL 2225851 (M.D. Fla. Apr. 19, 2019); *Tobinick v. Novella*, 2018 WL 6978637,

---

pointed out, though, this did not mean a federal court could not apply an anti-SLAPP law (like the Florida statute at issue here) that entitles a defendant to fees after prevailing on a Motion to Dismiss under the Federal Rules of Civil Procedure. *Abbas*, 783 F.3d at 1335 n.3.

8

at *2 (S.D Fla. Nov. 20, 2018) (holding that fee-shifting provision of California anti-SLAPP law applies in federal court), *R. & R. adopted*, 2018 WL 6978637 (S.D. Fla. Dec. 6, 2018); *Adelson v. Harris*, 774 F.3d 803, 809 (2d Cir. 2014) (holding that, regardless of whether entire Nevada anti-SLAPP law applies in federal court, its mandatory fee-shifting provision "seem[s] to us unproblematic," because it "(1) would apply in state court had suit been filed there; (2) is substantive within the meaning of *Erie* …; and (3) does not squarely conflict with a valid federal rule.). Plaintiff does not even attempt to explain why the Court should treat this case any differently.

Plaintiff also argues that, if the anti-SLAPP law's fee-shifting provision does apply in federal court, it still does not apply here because "Plaintiff filed this action because he was defamed. He did not file this case because The Daily Beast exercised the constitutional right to free speech on any issue." Opp. at 10. But this is just wrong. Even if Plaintiff does (incorrectly) believe that he was defamed, the Florida anti-SLAPP law applies as long as his claim lacks merit and "*arises out of* [The Daily Beast's] exercise of [its] 'constitutional right of free speech in connection with a public issue.'" *Parekh v. CBS Corp.*, No. 6:18-cv-466, Dkt. 104, slip op. at 10 (M.D. Fla. Jan. 9, 2019) (filed at Dkt. 16-4) (emphasis added). And there is no question here that this lawsuit "arises out of" the Article, which reported on a public figure and a matter of public concern. Because the lawsuit is also devoid of merit, the anti-SLAPP law's mandatory fee-shifting provision applies.

In fact, Plaintiff's Opposition actually illustrates why this case goes to the heart of the anti-SLAPP law's purpose. It gives every indication that he cares more about subjecting The Daily Beast to "the necessity of defending against expensive yet groundless litigation," *Michel v. NYP Holdings, Inc.*, 816 F.3d 686, 702 (11th Cir. 2016), than about establishing a viable claim. Plaintiff has shown no interest in defending the substantive deficiencies in his legal claims or his failure to comply with the pre-suit notice statute. Instead, he has largely ignored The Daily Beast's legal arguments and responded with conclusory assertions and *ad hominem* attacks on The Daily Beast's integrity. *See* Opp. at 2 ("In the past few years, there has arisen an aggressive breed of online publication that specializes in scandal. Daily Beast is one such online purveyor."). This public figure's use of meritless litigation to punish a news organization for writing about a matter of public concern is exactly what the Florida anti-SLAPP law is intended to address.

## **CONCLUSION**

For these reasons, this action should be dismissed and The Daily Beast should be awarded its reasonable attorneys' fees and costs.

Date: February 21, 2020

                Respectfully submitted,

                /s/ Roy Black
                Roy Black
                Jared Lopez
                Black, Srebnick, Kornspan & Stumpf, P.A.
                201 So. Biscayne Boulevard
                Miami, Florida 33131
                rblack@royblack.com
                jlopez@royblack.com

                Katherine M. Bolger (*pro hac vice*)
                Adam Lazier (*pro hac vice*)
                Davis Wright Tremaine LLP
                1251 Avenue of the Americas, 21s t Floor
                New York, New York 10020
                katebolger@dwt.com
                adamlazier@dwt.com

                *Attorneys for Defendant*

4844-8752-7092v.2 0039893-000034

## **CERTIFICATE OF SERVICE**

I hereby certify that on February 21, 2020, a true and correct copy of the foregoing was served via CM/ECF on all counsel of record.

/s/ Jared Lopez
Jared Lopez

4844-8752-7092v.2 0039893-000034