UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
FORT PIERCE DIVISION
**Case Number: 19-14472-CV-MARTINEZ-MAYNARD**

DAN BONGINO,
    Plaintiff,
v.

THE DAILY BEAST COMPANY, LLC,
    Defendant.
_____/

## ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

THIS CAUSE is before the Court upon Defendant The Daily Beast Company LLC's Motion to Dismiss. (ECF No. 16). The Court has reviewed the Motion, Plaintiff's Response in Opposition thereto, (ECF No. 19), the pertinent portions of the record, and is otherwise fully advised in the premises. For the following reasons, the Court **GRANTS** Defendant's Motion.

**I.    BACKGROUND**

Plaintiff Dan Bongino is a public figure. (Sched. Report ¶ 7, ECF No. 12). A former Secret Service member, Mr. Bongino describes himself as "an outspoken supporter of President Donald Trump." (Compl. ¶ 5, ECF No. 1). He hosts a podcast, appears on Fox News, writes books, and has more than 1,500,000 followers on social media. *Id.* Until 2018, he hosted a show on NRATV, the National Rifle Association's online video channel. *Id.*

Upon learning that Bongino's show would no longer air, Defendant's reporter texted him and asked, "Heard you didn't renew with NRA TV?" *Id.* ¶ 4. Bongino did not respond. *Id.* Four days later, the reporter texted again, "Just circling back on this. Probably publishing something today." *Id.* Still, no response. *Id.* Defendant then published an article titled, "Dan Bongino out at NRATV—BONGI-NO-MORE." (ECF No. 16-1, Lachlan Markay, *Dan Bongino Out at NRATV*, The Daily Beast, https://www.thedailybeast.com/sources-dan-bongino-out-at-nratv (last updated

1

Dec. 11, 2018 2:11 PM)). The article's subheading reads, "Trump loves the guy. But the gun rights group is downsizing its media operation and his show appears to be a casualty of those plans." *Id.* The first sentence continues, "The National Rifle Association's media arm has dropped pro-Trump firebrand Dan Bongino . . . ." *Id.* The article also notes that neither Bongino nor the NRA responded to Defendant's requests for comments at first. *Id.*

After publication, however, Bongino and NRATV responded to the article publicly. *Id.* The next day, Defendant revised the article to include their reactions. *Id.* The article now reads, "[Bongino] suggested that the decision not to renew the show was his, not the network's" and "NRATV released a statement saying the network 'made every attempt to retain [Bongino] in 2019' but did not elaborate on the negotiations." *Id.*

That article is the basis for this suit. Bongino charges Defendant with defamation, commercial disparagement, and violating Florida's Deceptive and Unfair Trade Practices Act (FDUTPA). (Compl. ¶¶ 22–39, ECF No. 1). Bongino claims the article conveys that NRATV fired him for cause; in truth he decided not to renew his contract, he says. *Id.* ¶ 4; *see also* (Pl.'s Resp. at 8, ECF No. 19). On that basis, he argues the article "imputes" to him an "unfitness to perform the duties" of his job, and therefore constitutes libel. *Id.* ¶ 25.

## II.     LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), a complaint must allege sufficient facts to state a facially plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. Dismissal is therefore proper "when, on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause

of action." *Allen v. USAA Cas. Ins. Co.*, 790 F.3d 1274, 1278 (11th Cir. 2015). In making this determination, a court construes the complaint's allegations in the light most favorable to the plaintiff. *Id.*

### III. DISCUSSION

Defendant now moves to dismiss the Complaint under Federal Rule of Civil Procedure 12(b)(6). (Def.'s Mot. Dismiss 1, ECF No. 16). As for the defamation claim, Defendant's argument is twofold. First, Defendant asserts that Plaintiff skirted a Florida law that requires defamation plaintiffs to provide media defendants with written notice at least five days before filing a complaint. *Id.* Second, the article is not defamatory as a matter of law. *Id.* Defendant also contends that Plaintiff's ancillary claims arise from the same article that prompts his defamation claim; therefore, Florida's "single action" doctrine bars such claims. *Id.* Finally, Defendant seeks to recover attorneys' fees and costs under Florida's anti-SLAPP statute, *id.* at 2, which the Florida legislature enacted to prohibit lawsuits that "are inconsistent with the right of persons to exercise . . . free speech in connection with public issues." *See* Fla. Stat. § 768.295(1). The Court addresses these arguments in turn.[1]

### A. Count I - Defamation

As a public figure, Plaintiff must satisfy the following elements to state a claim for defamation under Florida law: (1) publication; (2) falsity; (3) actual malice; (4) actual damages;

---

[1] The Court first notes that Plaintiff's Complaint serves as the most common form of a stereotypical shotgun pleading and runs afoul of the Federal Rules of Civil Procedure and Eleventh Circuit precedent in that it "contains several counts, each one incorporating by reference the allegations of its predecessors [i.e., predecessor counts], leading to a situation where most of the counts (i.e., all but the first) contain irrelevant factual allegations and legal conclusions." *Strategic Income Fund, L.L.C. v. Spear, Leeds & Kellogg Corp.*, 305 F.3d 1293, 1295 (11th Cir. 2002); *see also Magluta v. Samples*, 256 F.3d 1282, 1284 (11th Cir. 2001) (identifying a complaint as a shotgun pleading where "[e]ach count incorporates by reference the allegations made in a section entitled 'General Factual Allegations'—which comprise[d] 146 numbered paragraphs— **while also incorporating the allegations of any count or counts that precede[d] it**.") (emphasis added). Nonetheless, because the Court is able to discern the basis of the Complaint, the Court will proceed on the merits.

and (5) the statement was defamatory. *See Jews For Jesus, Inc. v. Rapp*, 997 So. 2d 1098, 1106 (Fla. 2008). Florida statute also requires that defamation plaintiffs serve media defendants with written notice, specifying the alleged defamatory statements "at least five days" before filing a complaint. *Ross v. Gore*, 48 So. 2d 412, 413, 415 (Fla. 1950) (discussing Fla. Stat. § 770.01).

### 1. *Plaintiff failed to comply with Florida's pre-suit notice provision.*

As a condition precedent to a defamation suit, Section 770.01 requires a plaintiff to serve a media defendant with written notice, specifying the alleged false or defamatory article and statements. *Id.* A plaintiff must serve that written notice "at least five days" before filing a complaint. *Id.* The purpose of this notice provision is to provide newspapers an "opportunity in *every case* to make a full and fair retraction," thus mitigating potential damages and protecting the all-important "interest in the free dissemination of news." *Ross*, 48 So. 2d at 415.

Plaintiff alleges he served Defendant with the written notice on December 5, 2019 and filed this suit on December 10, 2019. (Compl. ¶ 20, ECF No. 1). In response, Defendant proffers the notice letter's postmark, revealing that Plaintiff did not mail the document until December 9, 2019—only one day prior to the commencement of this action. (Def's Mot. Dismiss, Ex. 2, ECF No. 16-2).

Although Plaintiff does not dispute or respond to the timestamped document, he argues the Court should consider it only upon a summary judgment motion. (Pl.'s Resp. at 5–6, ECF No. 19). The Court may, however, consider a document attached to a motion to dismiss without converting the motion into one for summary judgment "only if the attached document is: (1) central to the plaintiff's claim; and (2) undisputed." *Horsely v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002); *but see Ruthledge v. NCL (Bah.) Ltd.*, 356 F. App'x 357, 358 (11th Cir. 2009) (finding district court converted motion to dismiss to summary judgment motion when it relied on defendant's affidavit,

4

which contradicted allegations in complaint). Undisputed in this context means that the parties do not challenge the document's authenticity. *Horsely*, 304 F.3d at 1134.

Plaintiff does not dispute the postmark's authenticity, and because the postmark is vital to the condition precedent issue, the Court finds that it may consider that document without converting the motion into one for summary judgment. Nonetheless, in an abundance of caution, and taking Plaintiff's allegations as true as required at this procedural juncture, the Court still finds that even if Plaintiff mailed the required written notice on December 5, 2019—as stated in the Complaint—Plaintiff may have still failed to satisfy the condition precedent. Florida courts have held that Florida Statute § 770.01 requires five **business days'** pre-suit notice. *See Canonico v. Callaway*, 26 So. 3d 53, 55–56 (Fla. 2d DCA 2010) (emphasis added). As such, according to Florida law, Plaintiff's notice should be considered insufficient.[2]

Nevertheless, the foregoing notice analysis does not determine the outcome of this decision. The Court need not decide whether Plaintiff's notice was in fact sufficient, or whether any notice deficiencies should result in dismissal with or without prejudice. Plaintiff's claims fail on the merits.

    2. *The article is not defamatory.*

Plaintiff emphasizes that the "gist" of Defendant's article implies to a reasonable reader that Plaintiff was fired for cause. (Pl.'s Resp. at 7 n.3, ECF No. 19). Specifically, Plaintiff objects to the article's statement that, "[t]he National Rifle Association's media arm has dropped…Dan Bongino from its lineup of conservative commentators," because he, not NRATV, decided to end

---

[2] The Court notes, however, that subject to an *Eerie* analysis, differences in the Florida Rules of Civil Procedure and the Federal Rules of Civil Procedure regarding the computation of time may very well change the outcome of this conclusion. Additionally, Federal Rules of Civil Procedure 9 and 12 require only that conditions precedent be pled generally. Fed. R. Civ. P. 9, 12. Nonetheless, as discussed, the point is moot; Plaintiff's claims fail on the merits.

the employment relationship. (Compl. ¶¶ 3, 4, 19, ECF No. 1). Plaintiff claims this misrepresentation imputes to him an "unfitness to perform the duties" of his job as a political commentator and radio host. *Id.* ¶ 25. For those reasons, he charges Defendant with defamation and defamation by implication. *Id.* at 4; *see also* (Compl. ¶ 25, ECF No. 1). The Court addresses each claim in turn.

    a) Defamation

Under Florida law, defamation is generally defined as "the unprivileged publication of false statements which naturally and proximately result in injury to another." *Wolfson v. Kirk*, 273 So. 2d 774, 776 (Fla. 4th DCA 1973). To state a claim for defamation, a plaintiff must plausibly allege the following five elements: (1) publication; (2) falsity; (3) the defendant acted with knowledge or reckless disregard as to the falsity on a matter concerning a public official, or at least negligently on a matter concerning a private person; (4) actual damages; and (5) the statement must be defamatory. *See Jews For Jesus*, 997 So. 2d at 1106. If the plaintiff bringing a defamation claim is a public figure, he or she must also demonstrate "actual malice" on behalf of the publisher by clear and convincing evidence. *New York Times Co. v. Sullivan*, 376 U.S. 254, 279–80 (1964); *see Levan v. Capital Cities/ABC, Inc.*, 190 F.3d 1230, 1239 (11th Cir.1999).

A defamatory statement "tends to harm the reputation of another by lowering him or her in the estimation of the community or, more broadly stated, one that exposes a plaintiff to hatred, ridicule, or contempt or injures his business or reputation or occupation." *Jews For Jesus*, 997 So. 2d at 1108–09.

Whether a statement is susceptible to defamatory interpretation is a question of law left to the Court. *See Turner v. Wells*, 198 F. Supp. 3d 1355, 1365 (S.D. Fla. 2016). This inquiry turns on the "gist" of the alleged defamatory statement and the context in which that statement was made.

*Jews For Jesus*, 997 So. 2d at 1107–08 & n.12. A court "must consider all the words used, not merely a particular phrase or sentence." *Byrd v. Hustler Magazine, Inc.*, 433 So. 2d 593, 595 (Fla. 4th DCA 1983) (citation omitted). Attention should also be "given to any cautionary terms used by the publisher in qualifying the statement." *Turner v. Wells*, 879 F.3d 1254, 1263, 1267 (11th Cir. 2018) (admonishing plaintiff for "cherry pick[ing] statements . . . out of context"). Only when a publication is "susceptible of two reasonable interpretations," one of which is defamatory, does the issue become one of fact for the jury. *Id.* at 1269. But when a communication "could not possibly have a defamatory or harmful effect, the court is justified in dismissing the complaint for failure to state a cause of action." *Rubin v. U.S. News & World Report, Inc.*, 271 F.3d 1305, 1306 (11th Cir. 2001) (citation omitted).

As an initial matter, at least one Florida court has held "the statement that a person was 'fired' from his employment, without more, is not defamatory." *Burnham v. Palm Beach Newspapers, Inc.*, No. CL-92-5867, 1993 BL 150, 21 Med. L. Rptr. 1914 (Fla. 15th Cir. Ct. June 25, 1993). The state court held that an employer's ability to terminate an employee is "inherent in the employment relationship" and the "exercise of that right does not necessarily impute wrongdoing to the employee." *Id*. (citing *Piccard v. Brennan*, 307 A.2d 833 (Me. 1973)).

Indeed, Defendant cites to a litany of authority—albeit from non-binding jurisdictions—agreeing with the premise that "[t]he mere statement that someone has been terminated from employment is not in and of itself defamatory," unless "the publication contains an insinuation that the discharge was for some misconduct." *Huard v. Town of Allenstown*, No. 10-cv-144-JL, 2011 WL 540766, at *5 (D.N.H. Feb. 8, 2011); *see also, e.g.*, *Klein v. Victor*, 903 F. Supp. 1327, 1335–36 (E.D. Mo. 1995) ("Even assuming that the statement is false, and that plaintiff was not actually terminated, that statement does not necessarily impute a want of knowledge, skill, capacity

7

or fitness to perform, nor does it impute fraud, want of integrity or misconduct…"); *Jack's Cookie Co. v. Brooks*, 227 F.2d 935, 937 (4th Cir. 1955) (letter stating that plaintiff was "no longer the sales representative of Jack's Cookie Company" and that this was "best for the company, its distributors, representatives and customers" was not defamatory as a matter of law because it "could not fairly be interpreted as charging [plaintiff] either with incompetence or dishonesty").

Seeming to acknowledge that, without more, the mere statement that an individual was terminated does not constitute defamation, Plaintiff makes much ado about the article's apparent insinuation that Plaintiff was not only fired but fired "for cause." (*See* Pl.'s Resp. at 8–9 (citing caselaw specific to statements that individual was fired for cause or other misconduct)). A plain reading of the article, however, renders Plaintiff's authority inapposite.

Here, even a cursory review reveals that nowhere in the article does it state that Plaintiff was fired—much less that he was fired for cause. (ECF No. 16-1). The article merely states that NRATV "dropped" Plaintiff from its lineup of conservative commentators. And as Plaintiff concedes, this is in fact true. *See Mason v. New Yorker Mag., Inc.*, 501 U.S. 496, 516 (explaining that even a flawed assertion of fact is not actionable as long as it is "substantial[ly] tru[e]," because the common law of libel "overlooks minor inaccuracies"). Indeed, the article's subheading explains that NRATV was "downsizing" and Plaintiff's show was "a casualty of those plans." *Id*. The article even reflects that NRATV made "every effort to retain [Bongino]." *Id.*[3] Such reporting is a far cry from stating that Plaintiff was fired for anything other than corporate downsizing.

---

[3] The Court notes that the article before it appears to have been edited after initial publication to reflect the comments made by both Plaintiff and officials from NRATV. As an initial matter, this highlights the importance of § 770.01's pre-suit notice requirement in that it allows such redactions or republications to occur prior to suit. Nonetheless, Plaintiff does not dispute the attached article's applicability to the instant motion to dismiss. *See Jones v. Bank of Am., N.A.*, 564 F. App'x 432, 434 (11th Cir. 2014) ("[A] party's failure to respond to any portion or claim in a motion indicates such portion, claim or defense is unopposed.").

To interpret the article differently, Plaintiff "cherry picks [one word] in the [article] out of context." *Turner*, 879 F.3d at 1267. To Plaintiff, "dropped" expresses that NRATV fired him. (Compl. ¶ 4, ECF No. 1). But the inquiry turns on "all the words used, not merely a particular phrase or sentence." *Byrd*, 433 So. 2d at 595. Not only does the article in its entirety convey that Plaintiff's departure stemmed from corporate downsizing, it also cautions readers against accepting that NRATV initiated Plaintiff's departure. For example, the article reflects that Plaintiff "suggested that the decision not to renew the show was his" and includes that NRATV did not "elaborate on the negotiations." (ECF 16-1). In effect, those words call to an average reader's attention that negotiations were opaque.[4] Those "cautionary terms" warrant more attention than the single word to which Plaintiff objects. *See Turner*, 879 F.3d at 1263.

In short, even if the Court were to agree with Plaintiff that the "gist" of the article states that he was fired, the Court agrees with the reasoning set forth in the foregoing authority that the mere statement that an individual was terminated, without an insinuation of misconduct, does not constitute defamation. Because no reasonable interpretation of the article could be construed to suggest that Plaintiff was "dropped" for any reason other than fiscal decision-making, Plaintiff fails to establish that the article amounts to defamation.

    b) <u>Defamation by Implication</u>

Plaintiff's alternative claim for defamation by implication fails for the same reasons. Defamation by implication occurs when "the defendant juxtaposes a series of facts so as to imply a defamatory connection between them," or when the defendant "creates a defamatory implication by omitting facts." *Jews For Jesus*, 997 So. 2d at 1108. In this sense, defamation by implication

---

[4] Defendant explicitly does not argue the actual malice element for this motion. (Def.'s Mot. Dismiss 6 n.3, ECF No. 16). That said, the Eleventh Circuit finds that actual malice is undermined when a "publisher includes information contrary to the general conclusions reached in an article . . . ." *Michel v. NYP Holdings, Inc.*, 816 F.3d 686, 703 (11th Cir. 2016).

imposes "liability upon the defendant who has the details right but the 'gist' wrong." *Id.* That said, "[a]ll of the protections of defamation law that are afforded to the media and private defendants" also apply "to the tort of defamation by implication." *Id.* This includes true statements and statements of pure opinions, which are protected by the First Amendment. *Turner*, 879 F.3d at 1262 ("Under Florida law, a defendant publishes 'pure opinion' when the defendant makes a comment or opinion based on facts which are set forth in the publication. . . .").

In support of his defamation by implication allegation, Plaintiff claims the article implies that NRATV dropped him because of his "quick temper," "brash style," and because he was an "outspoken defender of President Trump." (Pl.'s Resp. at 7 n.3, ECF No. 19). But the article does not juxtapose those snippets to imply they are the reason that NRATV dropped Bongino. Nevertheless, such statements are, at the very least, protected statements of pure opinion.

For starters, the article states, "Bongino is known as an outspoken defender of President Trump, and recently released a book alleging 'an attempt to sabotage' the president . . . ." (ECF 16-1). The Complaint also describes Plaintiff as "an outspoken supporter of President Donald Trump. In 2018, Plaintiff published . . . *Spygate: The Attempted Sabotage of Donald J. Trump.*" (Compl. ¶ 5, ECF No. 1). Consequentially, the statement is true and thus privileged by the First Amendment. *Turner*, 879 F.3d at 1262. Even still, the article does not juxtapose this soundbite with Plaintiff's departure from NRATV. In fact, the article suggests NRATV embraced the "style of commentary that dovetails with contemporary conservative rhetoric," thereby suggesting Plaintiff's support for Trump was valuable to the station. (ECF No. 16-1).

Next is the article's reference to Plaintiff's "quick temper," and "brash style." Those comments both opine on a "2016 interview with Politico reporter Marc Caputo, which ended with Bongino screaming obscenities at the journalist before hanging up." *Id.* These comments, however

unflattering, are "pure opinion" and thus protected by the First Amendment. *Turner*, 879 F.3d at 1262; *see also Jews For Jesus*, 997 So. 2d at 1108 (explaining that statements of opinion cannot support claim for defamation by implication).

In sum, dismissal is proper because "no construction" of the article will support Plaintiff's defamation charge. *Allen*, 790 F.3d at 1278. And notably, the Eleventh Circuit acknowledges a "powerful interest in ensuring that free speech is not unduly burdened by the necessity of defending against expensive yet groundless litigation." *Michel*, 816 F.3d at 702.

Count I is therefore dismissed.

### B. Plaintiff's Commercial Disparagement (Count II) and FDUTPA (Count III) Claims

Plaintiff additionally claims Defendant's article renders it liable for commercial disparagement and FDUTPA violations. But Defendant maintains that these claims are barred by Florida's single publication doctrine. (Def.'s Mot. Dismiss 9, ECF No. 16).

Under Florida law, a single publication sustains a single cause of action. *See Fridovich v. Fridovich*, 598 So. 2d 65, 70 (Fla. 1992) ("[A] plaintiff cannot transform a defamation action into a claim for intentional infliction of emotional distress simply by characterizing the alleged statement as 'outrageous.'"). Were the law otherwise, plaintiffs could elude the constitutional safeguards that are part and parcel of defamation law by "simply renaming the cause of action and repleading the same facts." *Id.* at 69. For that reason, the single publication doctrine bars actions that "arise from the same publication upon which a failed defamation claim is based." *Ovadia v. Bloom*, 756 So. 2d 137, 141 (Fla. 3d DCA 2000). Notably, "[i]f the defamation count fails, the other counts based on the same publication must fail as well." *Callaway Land & Cattle Co. v. Banyon Lakes C. Corp.*, 831 So. 2d 204, 208 (Fla. 4th DCA 2002); *World Wide Med. Techs., LLC*

*v. Florida Pharm. Ass'n*, No. 4:04-cv-118-SPM/AK, 2005 WL 8164942, at *9 (N.D. Fla. Nov. 28, 2005).

Seeking to circumvent this doctrine, Plaintiff cites two cases in which courts have done what he now requests. First, he cites *Alvi Armari Med., Inc. v. Hennessey*, 629 F. Supp. 2d 1302, 1304–05 (S.D. Fla. 2008), where a court in this District permitted the plaintiffs to proceed with their FDUTPA claim because their complaint "alleged an independent basis" for that claim, "namely, [d]efendants' deceptive and misleading conduct, *separate and apart* from defamatory statements." (emphasis added). Similarly, in *Primerica Fin. Servs., Inc. v. Mitchell*, 48 F. Supp. 2d 1363, 1368 (S.D. Fla. 1999), which Plaintiff also cites, the plaintiff pled "other circumstances and facts," separate from the allegedly untruthful statements. *Id*.

Plaintiff's tag-along claims stem from the same article as his defamation claim. (Compl. ¶¶ 30, 31, 36, ECF No. 1). Indeed, Plaintiff's ancillary claims explicitly incorporate by reference the very facts contained in his defamation count.[5] Accordingly, Plaintiff's claims for commercial disparagement and violation of FDUTPA must be dismissed. *See Klayman v. Jud. Watch, Inc.*, 22 F. Supp. 3d 1240, 1256–57 (S.D. Fla. 2014) (dismissing plaintiff's ancillary claims based on same underlying facts as defamation claim, which failed to survive summary judgment); *Ortega Trujilo*, 17 F. Supp. 2d at 1339 (dismissing false light invasion of privacy claim because it was "based on the same facts giving rise to the claim for defamation").

Additionally, Plaintiff fails to establish that the FDUTPA even applies to Defendant's publication of the article. For the FDUTPA to apply, the alleged violation must have taken place "in the conduct of any trade or commerce," which is defined as "the advertising, soliciting, providing, offering, or distributing" of goods, services, property, "or any other article, commodity,

---

[5] As discussed previously, this in and of itself is improper pleading.

12

or thing of value." Fla. Stat. §§ 501.203(8), 501.204(1). Where the allegedly violative action is the publication of information, the statute applies only to commercial speech—or, "expression related solely to the economic interests of the speaker and its audience." *Tobinick v. Novella*, 848 F.3d 935, 950 (11th Cir. 2017) (quoting *Central Hudson Gas & Elec. Corp. v. Pub Serv. Comm'n of N.Y.*, 447 U.S. 557, 561 (1980)).

Plaintiff argues that the FDUTPA applies to Defendant's publication of the article because Defendant "provides goods, services and information on its website for profit to subscribers." (ECF No. 19 at 10). This argument has been expressly foreclosed by the Eleventh Circuit in *Tobinick*. "[M]agazines and newspapers often have commercial purposes, but those purposes do not convert the individual articles within these editorial sources into commercial speech." *Tobinick*, 848 F.3d at 952. Accordingly, the FDUTPA does not apply and Plaintiff's claim fails.

Plaintiff's ancillary claims for commercial disparagement (Count II) and FDUTPA violations (Count III) are dismissed.

## C. **Florida's Anti-SLAPP statute**

Florida's anti-SLAPP statute prohibits a person from filing a suit that is (a) "without merit" and (b) "primarily" because the person against whom the suit was filed "exercised the constitutional right of free speech in connection with a public issue . . . ." Fla. Stat. § 768.295(3). The Florida legislature enacted the statute to deter such suits, finding they are "inconsistent" with the constitutional right of free speech—the preservation of which is a "fundamental state policy[.]" *Id.* § 768.295(1). Presumably for that reason, the statute awards a defendant fees and costs if a plaintiff files a forbidden suit. *Id.* § 768.295(4).

Defendant contends this statute entitles it to recover its fees and costs because Plaintiff filed this lawsuit (a) "without merit" and (b) because Defendant "exercised the constitutional right

of free speech in connection with a public issue." (Pl.'s Resp. at 13, ECF No. 19). Plaintiff responds by arguing that his suit did not violate the statute because Defendant did not "exercise the constitutional right to free speech on any issue" and contending that this statute does not apply in a federal court anyway. *Id.* at 11.

### 1. *Whether Plaintiff's suit violated Florida's anti-SLAPP statute*

Florida's anti-SLAPP statute prohibits a person from filing a cause of action that is (a) "without merit" and (b) "primarily" because the person against whom the suit was filed exercised the constitutional right of free speech in connection with a public issue. Fla. Stat. § 768.295(3). As used in that provision, "free speech in connection with a public issue" includes any written statement protected under applicable law and made in connection with a news report. Fla. Stat. § 768.295(2)(a).

The Eleventh Circuit recently affirmed an order awarding fees and costs under this statute in a case akin, in both posture and substance, to this one. *See Parekh v. CBS*, No. 19-11794, 2020 WL 3400679 (11th Cir. 2020). The media defendant in *Parekh* filed one motion to dismiss the plaintiff's defamation claim and to recover fees and costs under Florida's anti-SLAPP statute. *Id.* at *2. The Eleventh Circuit affirmed the complaint's dismissal because the disputed statement, even if false, "[was] not actionable because it [was] not defamatory." *Id.* at *5. For that reason, the suit was filed "without merit." *Id.* at *6. The suit also "arose out of the defendants' protected First Amendment activity—publishing a news report on a matter of public concern." *Id.* The Eleventh Circuit thus concluded that the statute's plain language supported the district court's decision to grant fees and costs. *Id.*

Because Plaintiff's suit fails to state a claim for defamation, it was without merit under Florida Statute §768.295(3). And because Plaintiff's suit "arose out of" Defendant's news report, the second element—free speech in connection with a public issue—is also satisfied. *See* Fla. Stat.

14

§768.295(2)(a); *Parekh*, 2020 WL 3400679, at *2. The statute therefore entitles Defendant to recoup reasonable attorneys' fees and costs.

  2. *Whether Florida's anti-SLAPP statute applies in Federal Court*

The *Parekh* court declined to address whether Florida's anti-SLAPP statute applies in federal court because the appellant raised the argument for the first time on appeal. *Parekh*, 2020 WL 3400679, at *7. Plaintiff, however, raises the argument here. (Pl.'s Resp. at 10, ECF No. 19). That brings the Court to the second question regarding Florida's anti-SLAPP statute: whether its fee-shifting provision applies in a federal court exercising diversity jurisdiction. As far as the Court is aware, the Eleventh Circuit has not addressed this question. So, this is a matter of first impression.

In such a case, a federal court will not apply a state statute that "answers the same question" as a Federal Rule of Civil Procedure. *See Carbone v. Cable News Network*, 910 F.3d 1345, 1349 (11th Cir. 2018) (addressing whether Georgia's anti-SLAPP statute applies in federal court) (quotation and citation omitted).

The Eleventh, Fifth, D.C., and now Second Circuits agree: certain states' iterations of the anti-SLAPP statute "answer the same question" as Federal Rules of Civil Procedure 8, 12, and 56. *See Carbone*, 910 F.3d at 1357 (11th Cir. 2018) (Georgia); *La Liberte v. Reid*, No. 19-3574, 2020 WL 3980223, at *3 (2d Cir. 2020) (California); *Klocke v. Watson*, 936 F.3d 240, 245 (5th Cir. 2019) (Texas); *Abbas v. Foreign Pol'y Grp., LLC.*, 783 F.3d 1328, 1334 (D.C. Cir. 2015) (D.C.).

Those statutes conflict with the Federal Rules of Civil Procedure because they raise the bar for a plaintiff to overcome a pretrial dismissal motion. *See Carbone*, 910 F.3d at 1350, 1356 (addressing Georgia's anti-SLAPP statute, which requires the "plaintiff to establish 'a *probability*' that he 'will prevail on the claim' asserted in the complaint"); *La Liberte*, 2020 WL 3980223, at

*4 (addressing California's anti-SLAPP statute, which requires "dismissal unless the plaintiff can 'establish a probability that he or she will prevail on the claim'"); *Klocke*, 936 F.3d at 246 (addressing Texas's anti-SLAPP statute, which requires "'clear and specific evidence' that a plaintiff can meet each element of his claim"); *Abbas*, 783 F.3d at 1333 (addressing D.C.'s anti-SLAPP statute, which requires dismissal when the "plaintiff does not have a likelihood of success on the merits").

Not so for Florida's anti-SLAPP statute. *See* Fla. Stat. § 768.295(4). Instead, it fuses with Rules 8, 12, and 56 by entitling the prevailing party to fees and costs if, after invoking the devices set forth by those rules, a court finds an action is "without merit" and thus prohibited. *Id.* To be sure, Florida's statute authorizes the use of procedural mechanisms—the filing of a motion to dismiss or a motion for final or summary judgment. *Id.* And it establishes that the moving party has the "right to an expeditious resolution" of those motions. *Id.* But it does not require the plaintiff "to establish 'a *probability*' that he 'will prevail on the claim' asserted in the complaint." *Carbone*, 910 F.3d at 1350 (quoting O.C.G.A. § 9-11-11.1(b)(1)) (explaining why Georgia's anti-SLAPP statute clashes with Rules 8(a) and 12(b)(6)). Nor does Florida's statute contemplate "a substantive, evidentiary determination of the plaintiff's probability of prevailing on his claim." *Id.* at 1350–51 (citation omitted) (explaining why Georgia's anti-SLAPP statute collides with Rule 56). At bottom, Florida's statute is a garden variety fee shifting provision, which the Florida legislature enacted to accomplish a "fundamental state policy"—deterring SLAPP suits. Fla. Stat. § 768.295(1). The result is a statute that does not "answer the same question" as the Federal Rules. *Shady Grove*, 559 U.S. at 401.

This conclusion is in line with decades of Eleventh Circuit precedent, which find that state-law statutes and claims for attorneys' fees and costs "unequivocally" apply in a federal court

exercising diversity jurisdiction. *See Showan v. Pressdee*, 922 F.3d 1211, 1225 (11th Cir. 2019) (finding a Georgia fee-shifting provision triggered when a party raises "a frivolous claim or defense" does not conflict with Rule 11); *Horowitch v. Diamond Aircraft Indus., Inc.*, 645 F.3d 1254, 1259 (11th Cir. 2011) ("[A] statute allowing for the recovery of attorney's fees, like the FDUTPA fee-shifting provision at issue in this case, generally applies in federal court so long as it does not conflict with a valid federal statute or rule"); *All Underwriters v. Weisberg*, 222 F.3d 1309, 1311–12 (11th Cir. 2000) (finding a Florida statute that provides attorney's fees when insurers are late paying their obligations is "substantive law for *Erie* purposes" because it creates a substantive right for insureds and imposes a substantive obligation on insurers); *Tanker Mgmt., Inc. v. Brunson*, 918 F.2d 1524, 1528–29 (11th Cir. 1990) (finding a Florida statute that provides attorneys' fees when a party unreasonably rejects a settlement offer or an offer of judgment applies in federal court because defendant could invoke same protections available to him in state court); *Schilling v. Belcher*, 582 F.2d 995, 1103 (5th Cir. 1978) ("Because this is a diversity case, the validity of the fee award must be tested under Florida law.").

In sum, the Court finds that Florida's anti-SLAPP fee-shifting provision does not conflict with any Federal Rules of Civil Procedure and thus may apply in a federal court exercising diversity jurisdiction.

### IV. CONCLUSION

Accordingly, after careful consideration, it is hereby **ORDERED** and **ADJUDGED** that:

1. Defendant's Motion to Dismiss Plaintiff's Complaint, [ECF No. 16], is **GRANTED**. Plaintiff's Complain is **DISMISSED without prejudice**. Plaintiff is **GRANTED** an opportunity to amend his Complaint **on or before August 20, 2020.** The Court notes, however, that should Plaintiff decide in good faith to amend his Complaint based on other facts not apparent on the face

of his Complaint, he shall be sure to include proper allegations, including those establishing special damages and the applicability of the FDUTPA. Failure to amend by August 20, 2020 shall result in the closing of this case.

2.      Defendant's Motion to recover costs and fees under Florida's anti-SLAPP statute is prospectively **GRANTED** as to its applicability in this federal case and Defendant's entitlement to such fees based on Plaintiff's initial Complaint. Nonetheless, because the Court is permitting Plaintiff one final opportunity to amend, the Court will hold off on a final ruling on the matter. Defendant may file an appropriate motion pursuant to this Order at the close of the case.

3.      The Court understands that there is a "powerful interest in ensuring that free speech is not unduly burdened by the necessity of defending against expensive yet groundless litigation." *Michel*, 816 F.3d at 702. Accordingly, and in light of this Order dismissing all of Plaintiff's claims, Defendant's Motion to Stay Discovery, [ECF No. 17], is **GRANTED** pending the potential filing of Plaintiff's Amended Complaint.

DONE AND ORDERED in Chambers at Miami, Florida, this 6th day of August 2020.

_____
JOSE E. MARTINEZ
UNITED STATES DISTRICT JUDGE

Copies provided to:
All counsel of record
Magistrate Judge Maynard