**IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Case No.: 19-cv-14472-JEM**

DAN BONGINO,

   Plaintiff,

vs.

THE DAILY BEAST COMPANY, LLC,

   Defendant.

_____/

**DEFENDANT THE DAILY BEAST COMPANY, LLC'S MOTION FOR ATTORNEYS'
FEES AND INCORPORATED MEMORANDUM OF LAW**

Pursuant to Federal Rule of Civil Procedure 54(d), Local Civil Rule 7.3, and this Court's

August 6, 2020 Order (ECF No. 23), Defendant The Daily Beast Company, LLC ("The Daily

Beast") respectfully moves to recover reasonable attorneys' fees under the mandatory fee-shifting

provision in Florida's anti-SLAPP law, Fla. Stat. § 768.295.

**INTRODUCTION**

This Court has already determined that Plaintiff Dan Bongino violated the Florida anti-

SLAPP statute by filing a meritless claim against The Daily Beast, arising from the exercise of its

free speech. ECF No. 23 at 14-18. The Court invited The Daily Beast to move for attorneys' fees

under that statute "at the close of the case." *Id.* at 18. Having now reached the close of the case,

following Bongino's decision to abandon his claims rather than file an amended pleading

addressing the deficiencies in his Complaint, The Daily Beast respectfully requests it be awarded

reasonable attorneys' fees. Indeed, fee-shifting is mandatory under the Florida anti-SLAPP statute,

as a means to discourage parties from filing meritless lawsuits that chill free speech.

The fees that The Daily Beast seeks in this motion are eminently reasonable for three

reasons. First, although Defendant's counsel are nationally-recognized media and First

Amendment litigators, they substantially discounted their standard hourly rates—bringing them in line with, if not below, the rates charged in the South Florida legal market in similar cases. Second, counsel worked an appropriate number of hours on this litigation, exercised strong billing judgment, and willingly wrote off a portion of the total fees in preparing this fee motion, in an effort to present the most reasonable request to this Court. Third, counsel received an excellent outcome in this litigation—namely, dismissal of all claims against The Daily Beast. All three of these factors warrant an award of the full amount of fees sought in this motion, which total $31,835.00. The Court should grant The Daily Beast's motion in furtherance of the "powerful interest in ensuring that free speech is not unduly burdened by the necessity of defending against expensive yet groundless litigation." *Michel v. NYP Holdings, Inc.*, 816 F.3d 686, 702 (11th Cir. 2016).

**FACTUAL BACKGROUND**

Bongino commenced this action on December 10, 2019, alleging that The Daily Beast had defamed him by publishing an article stating that NRATV had "dropped" his show as part of the NRA's "downsizing its media operation." *See generally* ECF No. 1 (hereinafter "Compl."). Bongino brought claims against The Daily Beast for defamation, commercial disparagement, and violation of Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA"). Compl. ¶¶ 16, 22–39. On January 31, 2020, The Daily Beast moved to dismiss the Complaint under Federal Rule of Civil Procedure 12(b)(6) and the Florida anti-SLAPP statute, Fla. Stat. § 768.295. *See generally* ECF No. 16. In its motion, The Daily Beast argued that the article was not defamatory under Florida law; that Bongino had failed to provide The Daily Beast with notice before commencing a defamation action against the media, as required by Florida Statutes § 770.01; and that Bongino's commercial disparagement and FDUTPA claims were barred by Florida's single-action doctrine.

2

*See id.*  The Daily Beast also argued that Bongino's lawsuit violated Florida's anti-SLAPP law, and thus entitled The Daily Beast to recover its attorneys' fees and costs incurred in defending against the case.  *See id.* at 13–15.

On August 6, 2020, the Court granted The Daily Beast's motion, agreeing that all three of Bongino's counts failed to state a claim as a matter of law, as The Daily Beast's article was not defamatory under Florida law and Bongino's commercial disparagement and FDUTPA claims were barred by Florida's single-action doctrine.  ECF No. 23 (hereinafter, the "MTD Order") at 4–13.  The Court granted the motion without prejudice, allowing Bongino until August 20, 2020 to file an Amended Complaint addressing the deficiencies in his original pleading, noting that failure to do so would result in the closing of the case.  *Id.* at 18.

In the MTD Order, the Court also prospectively granted The Daily Beast's motion to recover costs and fees under Florida's anti-SLAPP statute "as to its applicability in this federal case and Defendant's entitlement to such fees based on Plaintiff's initial Complaint."  *Id.*  In particular, the Court held that Bongino's lawsuit violated the Florida anti-SLAPP statute because the suit was "without merit" and "primarily" brought because The Daily Beast exercised its constitutional right of free speech in connection with a public issue.  *Id.* at 13–15.  It further held that the fee-shifting provision of Florida's anti-SLAPP statute applies in federal court.  *Id.* at 15–17.  The Court noted, however, that because it was permitting Plaintiff one final opportunity to amend, it would hold off on a final ruling on the matter, stating that: "Defendant may file an appropriate motion pursuant to this Order at the close of the case."  *Id.* at 18.

Bongino elected not to amend his Complaint.  Instead, he filed a Notice of Voluntary Dismissal on August 10, 2020, purporting to "voluntarily" dismiss the case without prejudice— exactly what this Court had already ordered over his opposition.  *See* ECF No. 24.  The next day,

the Court dismissed the case without prejudice and closed the case. *See* ECF No. 25. Having

reached "the close of the case," The Daily Beast now files its motion for attorneys' fees under the

Florida anti-SLAPP statute, as allowed by the statute, the Local Rules, and this Court's MTD

Order. In compliance with Local Rule 7.3(b)'s requirement that the parties "confer and attempt in

good faith to agree on entitlement to and the amount of fees and expenses," The Daily Beast served

a copy of this motion on counsel for Bongino on September 3, 2020. Bolger Decl. ¶ 20. Despite

repeated requests from The Daily Beast, counsel for Plaintiff never responded. *See id.* ¶¶ 20-22.

Plaintiff has also not served any response "describ[ing] in writing and with reasonable particularity

each time entry or nontaxable expense to which it objects, both as to issues of entitlement and as

to amount, and shall provide supporting legal authority" as that Local Rule also requires.[1] The

Daily Beast now timely files the motion before this Court.

## ARGUMENT

In enacting its anti-SLAPP statute, the Florida Legislature declared that prohibiting SLAPP

lawsuits would protect "the right of persons to exercise [their] constitutional rights of free speech

in connection with public issues." Fla. Stat. § 768.295(1). True protection, however, cannot exist

where plaintiffs can compel defendants to expend substantial resources in defending against these

meritless lawsuits. Accordingly, the Florida Legislature, like many other states, included a fee-

shifting provision in its anti-SLAPP statute, which provides that the "court shall award the

---

[1] Plaintiff's failure to abide by the requirements of the Local Rule waives any objection he may now belatedly raise to the fees requested in this motion. *Club Madonna, Inc. v. City of Miami Beach*, 2015 WL 5559894, at *9 (S.D. Fla. Sept. 22, 2015) ("The Court is not so lenient when a party flippantly disregards the Local Rules—especially rules that are designed to conserve the Court's resources—and finds that Plaintiffs waived their objections to the City's fee request as to Count II by failing to comply with Local Rule 7.3(b)"); *see also, e.g., Perez v. Praetorian Ins. Co.*, 2019 WL 2255578, at *5 (S.D. Fla. Feb. 26, 2019), *report and recommendation adopted*, No. 16-CV-23817, 2019 WL 2254952 (S.D. Fla. Mar. 15, 2019).

prevailing party reasonable attorney fees and costs incurred in connection with a claim that an action was filed in violation of this section."  Fla. Stat. § 768.295(4).  Such a provision "discourage[s SLAPP suits] by imposing the litigation costs on the party seeking to 'chill the valid exercise of . . . constitutional rights.'"  *Scott v. Kelkris Assocs.*, No. CIV. 2:10-1654 WBS DAD, 2012 WL 1131360, at *3 (E.D. Cal. Mar. 29, 2012) (applying California statute).

When a plaintiff violates the Florida anti-SLAPP statute, application of the fee-shifting provision is mandatory.  Fla. Stat. § 768.295(4) ("The court *shall* award the prevailing party reasonable attorney fees and costs . . . ." (emphasis added)); *see Boling v. WFTV, LLC*, No. 2017-CA-6488, 2018 WL 2336159, at *2 (Fla. Cir. Ct. Feb. 28, 2018) ("Under the [Florida] anti-SLAPP law, an award of reasonable attorneys' fees and costs is mandatory . . . ."); *Parekh v. CBS Corp.*, No. 6:18-CV-466-ORL-40TBS (M.D. Fla. Jan. 9, 2019), ECF No. 104 (Order on Motion to Dismiss) at 10 (same), *aff'd*, --- F. App'x ----, 2020 WL 3400679 (11th Cir. June 19, 2020). This Court has already ruled that: "because Plaintiff's suit fails to state a claim for defamation, it was without merit under Florida Statute § 768.295(3).  And because Plaintiff's suit 'arose out of' Defendant's news report, the second element—free speech in connection with a public issue—is also satisfied."  MTD Order at 14 (citing Fla. Stat. § 768.295(2)(a) and *Parekh*, 2020 WL 3400679, at *2).  The statute "therefore entitles Defendant to recoup reasonable attorneys' fees and costs." *Id.* at 14-15.  The Court should, therefore, grant The Daily Beast's request for reasonable and appropriate attorneys' fees.

## I.    THE DAILY BEAST IS THE PREVAILING PARTY IN THIS CASE.

Before delving into the fee amount analysis, The Daily Beast briefly addresses the issue of prevailing party status.  Bongino may argue that The Daily Beast is not a "prevailing party" under the Florida anti-SLAPP statute because he voluntarily dismissed the case after this Court granted

The Daily Beast's motion to dismiss.  Any such argument, however, is without merit.

Under Florida law, in the absence of a statutory or contractual provision to the contrary, the defendant is the prevailing party for purposes of attorneys' fees if the plaintiff voluntarily dismisses the case.  *See Parra v. Minto Townpark, LLC*, No. 08-14168-CIV, 2009 WL 2602678, at *2 (S.D. Fla. Aug. 21, 2009) ("In the absence of a specific or limiting provision, general law regarding prevailing party status upon voluntary dismissal applies. . . .  *Generally, when a plaintiff voluntarily dismisses an action, the defendant is deemed the prevailing party for purposes of attorney's fees.*") (emphasis added); *see also Herbst v. N. Ocean Condos, L.P.*, No. 08-60869-CIV, 2009 WL 2257827, at *1 (S.D. Fla. July 29, 2009).  This rule "applies to both 'statutory or contractual provisions awarding attorney's fees to the 'prevailing party' in litigation'. . . [and] applies even if the dismissal is without prejudice, and 'despite the fact the case has not been resolved on the merits.'"  *Nukote Int'l, Inc. v. Office Depot, Inc.*, No. 09-82363-CIV, 2010 WL 4942838, at *2 (S.D. Fla. Nov. 30, 2010) (granting defendant's motion for attorneys' fees after plaintiff voluntarily dismissed the action) (internal citations omitted).[2]

Florida's anti-SLAPP statute does not include any language conditioning "prevailing party" status on the entry of judgment or the conclusion of appeals.  On the contrary, the statute simply states that the Court must award the prevailing party reasonable fees and costs "incurred in connection with a claim that an action was filed in violation of this section."  Fla. Stat. § 768.295(4).  Because The Daily Beast's successful motion to dismiss was "a claim that an action

---

[2] These cases hold that the defendant is the prevailing party even if the plaintiff voluntarily dismisses the case *before* the court has had an opportunity to rule on the merits.  *See, e.g.*, *Nukote Int'l*, 2010 WL 4942838, at *2.  Here, of course, The Daily Beast's status as a prevailing party is even more clear, because Bongino waited until *after* the Court granted its motion to dismiss—and after it incurred significant legal fees on that motion—before he purported to voluntarily dismiss the case.

was filed in violation of" the anti-SLAPP law, the Court should follow the general rule under Florida law that, "[i]n the absence of a specific or limiting provision, . . . when a plaintiff voluntarily dismisses an action, the defendant is deemed the prevailing party for purposes of attorney's fees." *Parra*, 2009 WL 2602678, at *2. That is especially so here, where Bongino's dismissal of the case was hardly "voluntary" at all, since it came only after the Court itself had dismissed the case.

Permitting Bongino to circumvent the anti-SLAPP statute through procedural gamesmanship would also undermine the purposes of that legislation. As courts have recognized in the context of other anti-SLAPP laws, "a voluntary dismissal should not automatically preclude an award of attorneys' fees to a defendant because '[o]therwise, SLAPP plaintiffs could achieve most of their objective with little risk—by filing a SLAPP suit, forcing the defendant to incur the effort and expense of preparing a special motion to strike, then dismissing the action without prejudice.'" *Gottesman v. Santana*, 263 F. Supp. 3d 1034, 1040–41 (S.D. Cal. 2017) (quoting *Coltrain v. Shewalter*, 66 Cal. App. 4th 94, 106–07 (1998), *as modified* (Sept. 4, 1998)). Indeed, the "specter of the action being refiled (at least until the statute of limitations had run) would continue to have a significant chilling effect on the defendant's exercise of its First Amendment rights . . . [, and at] that point, the plaintiff would have accomplished all the wrongdoing that triggers the defendant's eligibility for attorney's fees, but the defendant would be cheated of redress." *Coltrain*, 66 Cal. App. 4th at 106–07.

Plaintiffs like Bongino should not be allowed to force defendants to incur substantial expenses in defending against meritless lawsuits that infringe their free speech, only to "voluntarily" dismiss the case (without prejudice) after they have lost, in an effort to avoid paying fees. Accordingly, this Court should confirm that The Daily Beast is the prevailing party in this

case, entitled to mandatory attorneys' fees under the Florida anti-SLAPP statute.

## II.   THE DAILY BEAST'S FEE REQUEST IS REASONABLE.

Courts in the Eleventh Circuit utilize the "lodestar approach" to calculate a reasonable attorney's fee. *See Gray v. Bostic*, 625 F.3d 692 (11th Cir. 2010); *see also City of Burlington v. Dague*, 505 U.S. 557, 562 (1992). The lodestar figure is reached by "multiply[ing] the number of hours reasonably expended by a reasonable hourly rate." *Loranger v. Stierheim*, 10 F.3d 776, 781 (11th Cir. 1994). After determining the lodestar, courts may adjust the amount upwards or downwards based on the "results obtained." *Norman v. Hous. Auth. of City of Montgomery*, 836 F.2d 1292, 1302 (11th Cir. 1988). Here, the Court should compensate The Daily Beast for the requested amount because: (1) counsel's hourly billing rates are reasonable; (2) counsel worked an appropriate number of hours on this litigation; and (3) counsel obtained an excellent result in the litigation.

### A.  Counsel's Hourly Billing Rates Are Reasonable.

"A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Loranger*, 10 F.3d at 781. The relevant legal community is "the place where the case is filed"—here, South Florida. *ACLU of Ga. v. Barnes*, 168 F.3d 423, 437 (11th Cir. 1999). Evidence of reasonable hourly rates "may be adduced through direct evidence of charges by lawyers under similar circumstances or by opinion evidence." *Norman*, 836 F.2d at 1299. In determining the prevailing market rate, a court may take into account the pertinent factors set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 718-19 (5th Cir. 1974), *abrogated on other grounds by Blanchard v. Bergeron*, 489 U.S. 87 (1989), including, *inter alia*, "the experience, reputation, and ability of the attorneys"; "the skill requisite to perform the legal service

properly"; "the novelty and difficulty of the questions"; "the amount involved and the results obtained"; and "awards in similar cases."[3]  *Burgos v. SunTrust Bank, N.A.*, No. 13-21197-Civ, 2020 WL 2299937, at *8 n.6 (S.D. Fla. Mar. 31, 2020), *R. & R. adopted*, No. 13-21197-Civ, 2020 WL 2299936 (S.D. Fla. May 7, 2020).

The Court should conclude that The Daily Beast's counsel's hourly billing rates are reasonable because counsel are renowned First Amendment lawyers who utilized their specialized knowledge to effectively litigate the complex legal issues in this case, and counsel's hourly rates— as discounted for this case—are in line with, if not below, comparable rates in the South Florida legal community.

       1.   *Counsel Are Renowned First Amendment Lawyers Who Utilized Their High Degree of Experience to Effectively Litigate the Specialized Legal Issues Presented by This Case.*

To represent them in this defamation litigation, The Daily Beast retained the law firm of Davis Wright Tremaine LLP ("DWT"), a firm widely acknowledged among the country's top media law practices.  Bolger Decl. ¶ 3.  Both Best Lawyers and U.S. News named DWT as the 2020 Law Firm of the Year in Media Law; and Law360 also named DWT as a national "Practice Group of the Year" in Media & Entertainment Law for the past three years.  *Id.*  The two New

---

[3] The other *Johnson* factors include: "the preclusion of other employment by the attorney due to acceptance of the case"; "the customary fee"; "whether the fee is fixed or contingent"; "time limitations imposed by the client or the circumstances"; "the 'undesirability' of the case"; "the time and labor required"; and "the nature and length of the professional relationship with the client."  *Johnson*, 488 F.2d at 717-19.  The Eleventh Circuit has noted that "the lodestar [approach]. . . presumptively includes all of the twelve factors . . . adopted in *Johnson* . . . . [However,] the district court may wish to consider any of the *Johnson* factors to the extent that they suggest that comparables offered may not be relevant to the issues before the court or as they may affect the weight to be given to the comparables being offered the court."  *Norman*, 836 F.2d at 1299–1300.

York-based DWT lawyers who worked on this litigation are highly experienced in this area of law. *Id.* ¶ 4.

Kate Bolger, the partner on the case, is a preeminent First Amendment attorney with more than 20 years of media litigation experience. *Id.* ¶ 5. As set out in greater detail in Ms. Bolger's declaration submitted with this motion, she has repeatedly been recognized as one of the country's leading media lawyers. *Id.* Adam Lazier—a senior associate at DWT who worked closely with Ms. Bolger on this case—has nine years of experience practicing media and defamation law. *Id.* ¶ 6. He has handled numerous complex and high-profile defamation litigations, and Best Lawyers recently recognized him as "One to Watch" in the field of intellectual property law. *Id.*[4]

The DWT attorneys' specialized experience in media and First Amendment law was necessary to efficiently and effectively litigate the complex defamation issues in this case. *See Carruthers v. Israel*, 274 F. Supp. 3d 1345, 1353–54 (S.D. Fla. 2017) (in determining relevant market rates, the court considered the fact that the "complexity of this case required skilled lawyers with specialized knowledge"). Because of their experience and skill, the DWT attorneys were able to quickly and economically obtain a just and favorable result for The Daily Beast. *See Norman,* 836 F.2d at 1300 (noting that the intrinsic value of legal skill lies in "further[ing] the client's interest").

---

[4] Marni Shapiro also worked on this case as a paralegal, and Trevor Franklin as a managing clerk. Ms. Shapiro has worked as a paralegal for more than 40 years and has specialized in assisting with media and First Amendment cases. Bolger Decl. ¶ 7. Ms. Shapiro assisted with editing and cite-checking the motion papers, and Mr. Franklin assisted in the logistical aspects of electronically filing some of the motion papers in this case. *See id.*, Ex. 4.

2. *Counsel's Hourly Rates, as Discounted for This Case, Are in Line with Those in the South Florida Legal Community.*

Despite their high degree of knowledge and experience in this area of law, DWT counsel substantially discounted their hourly rates for purposes of this litigation to meet the rates set by The Daily Beast's insurance company, Chubb. *See* Bolger Decl. ¶ 9. As demonstrated by the chart below, while Ms. Bolger typically charged $710/hour in 2019 and $775/hour in 2020, she only charged $450/hour on this case. *Id.* Likewise, Mr. Lazier usually charged $595/hour in both 2019 and 2020, but only charged $350/hour on this case. *Id.* Ms. Shapiro and Mr. Franklin also charged substantially below their standard rates, as described in the chart below:

| Davis Wright Tremaine LLP Hourly Rates | | | | |
|---|---|---|---|---|
| **Name** | **Title** | **2019 Standard Rate** | **2020 Standard Rate** | **Discounted Rate for this Case** |
| Kate Bolger | Partner | $710 | $775 | **$450** |
| Adam Lazier | Associate | $595 | $595 | **$350** |
| Marni Shapiro | Paralegal | $380 | $400 | **$150** |
| Trevor Franklin | Senior Managing Clerk | $320 | $340 | **$150** |

*See* Bolger Decl. ¶ 10.

The discounted hourly rates charged by the DWT team in this case are in line with, if not below, the median rates that South Florida courts have awarded to attorneys in similar cases, especially where, as here, the attorneys specialize in First Amendment law. *See, e.g.*, *Prison Legal News v. Inch*, 411 F. Supp. 3d 1198, 1207–08 (N.D. Fla. 2019) (finding, in a First Amendment and due process case, that lead counsel's hourly rates of $900 and $825 were reasonable within the legal market of Miami—where the case was originally filed—and noting the lawyers' "excellent reputations and abilities in determining a reasonable fee for their legal services"); *Rubenstein v. Fla. Bar*, No. 14-cv-20786, 2015 WL 1470633, at *2 n.2 (S.D. Fla. Mar. 31, 2015) (finding that a rate of $550/hour was reasonable in a case involving First Amendment violations by the Florida

Bar, where the lead attorney "specialize[d] in First Amendment litigation [and] handle[d] similar cases across the country"), *R. & R. adopted*, No. 14-CIV-20786, 2015 WL 11216722 (S.D. Fla. Apr. 22, 2015); *see also CBS Broad., Inc. v. Browning*, No. 06-22463-CIV, 2007 WL 2850527, at *3, *7 (S.D. Fla. Sept. 21, 2007) (approving, in 2007, hourly rates of $550 for the lead partner, $375 for a seventh-year associate, and $350 for a fourth-year associate, noting that "[i]t is undisputed that the experience of the Cahill Gordon attorneys in [First Amendment] litigation is substantial").

Indeed, in another recent defamation case where the court's dismissal triggered an anti-SLAPP statute, the court rejected the plaintiff's argument that the hourly rates of $650 for lead defense counsel and $360 for a fifth-year associate were unreasonable. *Tobinick v. Novella*, 207 F. Supp. 3d 1332, 1341 (S.D. Fla. 2016) (noting the court did not agree with plaintiffs' "challenge to [defendant's] counsel's hourly rates"); *see also id.*, No. 9:14-cv-80781-RLR (S.D. Fla.), ECF No. 292 at 8–9 (defendant's brief, noting that lead counsel's standard hourly rate was $650 and that he "is a nationally accomplished attorney in the areas of First Amendment and free speech law . . . [and] has developed a special facility in the area of Anti-SLAPP litigation"); *id.*, ECF No. 315 at 7 (reply brief, noting that fifth-year associate's standard hourly rate was $360).  This decision was affirmed by the Eleventh Circuit.  *See Tobinick v. Novella*, 884 F.3d 1110, 1120 (11th Cir. 2018).

South Florida courts have also found hourly rates higher than DWT's discounted rates to be reasonable in cases involving similar areas of specialization, such as trademark and intellectual property.  *See Domond v. PeopleNetwork APS*, 750 F. App'x 844, 848 (11th Cir. 2018) (affirming district court's finding, in a trademark case, that attorneys' hourly rates of $650 and $425 were reasonable in light of evidence about Miami rates and in light of counsel's skill, experience, and

reputation); *see also Heron Dev. Corp. v. Vacation Tours, Inc.*, No. 16-20683-CIV, 2019 WL 4694147, at \*4 (S.D. Fla. Aug. 27, 2019) (approving hourly rate of $550 based on court's "own knowledge of billing rates charged by other intellectual property and appellate lawyers in South Florida"); *CBRE, Inc. v. Capital Commercial Real Estate Grp., Inc.*, No. 19-61235-CIV, 2019 WL 7708503, at \*2 (S.D. Fla. Oct. 10, 2019) (in trademark case, approving hourly rate of $585 for partner and $360 for sixth-year associate), *R. & R. adopted*, No. 19-CIV-61235-RAR, 2019 WL 7708499 (S.D. Fla. Oct. 28, 2019).

These courts have even approved comparable rates in less-specialized areas, such as general commercial litigation.  *See All Web Leads, Inc. v. D'Amico*, No. 18-cv-80571, 2019 WL 2051970, at \*2 (S.D. Fla. May 2, 2019) (finding, in contract case, that $525/hour was reasonable for co-managing partner and $400/hour reasonable for seventh-year associate); *Procaps S.A. v. Patheon Inc.*, No. 12-24356-CIV, 2013 WL 6238647, at \*14 (S.D. Fla. Dec. 3, 2013) (approving hourly rate of $565 for lead counsel from premier national law firm in federal antitrust case); *MKT Reps S.A. de C.V. v. Standard Chartered Bank Int'l (Americas) Ltd.*, No. 10-22963-CIV, 2013 WL 1289261, at \*9 (S.D. Fla. Mar. 28, 2013) (in contract case, approving hourly rates from large Miami-based firm of $500 for lead partner); *Kleiman v. Wright*, No. 18-80176-CV, 2020 WL 1980601, at \*3–4 (S.D. Fla. Mar. 17, 2020) (noting that "the top civil litigators in Palm Beach County . . . [charge] between $600 and $700 per hour").  Indeed, South Florida courts have also approved rates in line with the discounted rates charged by DWT's support staff—Ms. Shapiro and Mr. Franklin.  *See Global Horizons Inc. v. Del Monte Fresh Produce N.A., Inc.*, No. 06-22315-CIV, 2009 WL 855970 (S.D. Fla. Mar. 31, 2009) (in 2009, awarding hourly rate of $160 for paralegals at premier South Florida law firm).

13

Accordingly, the DWT team's discounted rates of $450/hour for Ms. Bolger, $350/hour for Mr. Lazier, and $150/hour for support staff are eminently reasonable, especially given their breadth of experience, reputation, and the excellent outcome achieved.

### B.  The Number of Hours Counsel Worked Is Reasonable.

The next step in the computation of the lodestar is a determination of reasonable hours expended on the litigation.  A fee applicant must provide a record of its counsel's hours, describing the general subject matter of counsel's work during those hours "with sufficient particularity so that the district court can assess the time claimed for each activity."  *Norman*, 836 F.2d at 1303. Counsel should exercise billing judgment by excluding "excessive, redundant or otherwise unnecessary [hours]."  *Hensley*, 461 U.S. at 434.  While the fee applicant bears the initial burden of submitting evidence sufficient to allow the Court to confirm that the requested fees are not excessive, "'objections and proof from fee opponents' concerning hours that should be excluded must be specific and 'reasonably precise.'"  *Barnes*, 168 F.3d at 428 (quoting *Norman*, 836 F.2d at 1301).  Ultimately, in determining reasonable hours expended, courts consider "whether all the work performed by [Defendant's] counsel was necessary and was performed efficiently."  *CBS Broad., Inc.*, 2007 WL 2850527, at *8.

While it has incurred more fees, The Daily Beast only seeks to recover for 91.9 hours' worth of DWT time, amounting to $31,835.00 in attorneys' fees at Chubb's discounted rate.  *See* Bolger Decl. ¶ 14.  The amount sought here pales in comparison to the award of nearly $140,000 under the anti-SLAPP law recently affirmed by the Eleventh Circuit, following dismissal of a defamation claim on a motion to dismiss.  *Parekh*, 2019 WL 2230075, at *4, *aff'd*, 2020 WL 3400679.

Because The Daily Beast has a self-insured retention agreement in its Chubb media liability policy that is higher than the fees paid in this matter, The Daily Beast has paid this amount in full itself—as well as the other fees that were excluded from this motion—without assistance from Chubb. *See* Bolger Decl. ¶ 13. Attached as Exhibit 4 to the Bolger Declaration is a full accounting of the requested fees with descriptions of the tasks performed for each billed hour. Below is a chart summarizing the hours and fees for which The Daily Beast seeks reimbursement:[5]

| Davis Wright Tremaine LLP Hours Billed | | | | |
|---|---|---|---|---|
| **Name** | **Title** | **Hours Billed** | **Discounted Rate for this Case** | **Fees Billed** |
| Kate Bolger | Partner | 15.9 | $450 | **$7,155** |
| Adam Lazier | Associate | 66.4 | $350 | **$23,240** |
| Marni Shapiro | Paralegal | 9 | $150 | **$1,350** |
| Trevor Franklin | Senior Managing Clerk | 0.6 | $150 | **$90** |
| Total | | 91.9 | | **$31,835** |

*Id.* ¶ 14.

In an effort to submit the most reasonable fee request possible to the Court, Ms. Bolger excluded from this motion almost all fees that were unrelated to the research, drafting, and filing of The Daily Beast's Motion to Dismiss and for recovery of attorneys' fees and costs under Florida's anti-SLAPP law (ECF No. 16) and Motion to Stay Discovery (ECF No. 17) and the reply memoranda for both (ECF Nos. 21 & 22). Bolger Decl. ¶¶ 14, 15. Some of the services that Ms. Bolger excluded from Exhibit 4 in an exercise of billing judgment included: drafting and filing a motion for an extension of the deadline to respond to the complaint; preparation for a scheduling

---

[5] The Daily Beast reserves the right to seek attorneys' fees based on time spent briefing the instant fee motion and any reply memorandum. *See Tobinick v. Novella*, No. 14-80781-CV, 2017 WL 8809365, at *6 n.10 (S.D. Fla. Nov. 29, 2017) (awarding defendants attorneys' fees based on "time spent on the attorneys' fee motion"), *R. & R. adopted,* No. 9:14-CV-80781, 2017 WL 8809110 (S.D. Fla. Dec. 18, 2017); *see also CBS Broad., Inc.*, 2007 WL 2850527, at *11 (awarding attorney's fees based on "the amount of time preparing the instant motion for attorney's fees").

hearing; drafting motions for *pro hac vice* admission; drafting a joint status report and conducting a Rule 16 conference with opposing counsel; and some early discovery efforts. *See id.* ¶ 15. Ms. Bolger also excluded all costs incurred in this litigation, as well as the fees incurred by another DWT associate who had a more limited role in the litigation than Mr. Lazier. *See id.*; *see also Khan v. Rundle*, No. 05-23123-CIV, 2008 WL 11406174, at *2 (S.D. Fla. Mar. 10, 2008) (granting motion for attorneys' fees, where "the attorneys in question exercised sound 'billing judgment' for the time entries at hand"), *R. & R. adopted*, No. 05-23123-CIV, 2008 WL 11406159 (S.D. Fla. Mar. 25, 2008). After these exclusions, The Daily Beast only seeks to recover for the limited legal services described in Exhibit 4—namely, the preparation and filing of the successful Motion to Dismiss and Motion to Stay Discovery—both of which were critical to the defense of this case and were granted by the Court. *See id.* ¶ 14, Ex. 4.

In *Parekh v. CBS Corporation*, the court awarded CBS $139,974.24 in attorney's fees under the Florida anti-SLAPP law following a successful motion to dismiss. 2019 WL 2230075, at *4, *aff'd*, 2020 WL 3400679. While CBS's award included more discovery work than occurred in this case, the size of the award is consistent with the Eleventh Circuit's recognition of the "powerful interest in ensuring that free speech is not unduly burdened by the necessity of defending against expensive yet groundless litigation." *Michel, Inc.*, 816 F.3d at 702; *see also Parekh*, 2020 WL 3400679, at *6 (holding that "the district court properly awarded fees to CBS and Mr. Conybeare under [the Florida anti-SLAPP law because] . . . Mr. Parekh's suit was 'without merit' . . . , and it arose out of the defendants' protected First Amendment activity—publishing a news report on a matter of public concern").

### C.  Counsel Obtained a Favorable Result.

After determining the lodestar, courts may adjust the amount upwards or downwards based on the "results obtained."  *Norman*, 836 F.2d at 1302.  In this case, The Daily Beast obtained complete success—dismissal of the case before the commencement of any discovery.  *See Parekh*, 2019 WL 2230075, at *3 (awarding CBS full compensation for all hours sought, noting that "Defendants' attorneys . . . obtained an excellent result," where the attorneys filed a successful motion to dismiss a defamation case under Florida's anti-SLAPP statute).  As evidenced by its decision not to seek an award of all fees and costs it has incurred in this matter, The Daily Beast is not seeking a windfall here; rather, it simply seeks reimbursement of the fees reasonably incurred in successfully defending its constitutionally-protected exercise of free speech against Bongino's meritless claims.

### CONCLUSION

For the foregoing reasons, the Court should grant The Daily Beast's motion for attorneys' fees and award The Daily Beast $31,835.00.

### REQUEST FOR HEARING

Pursuant to Local Rule 7.1(b)(2), The Daily Beast respectfully requests oral argument on this motion.

### LOCAL RULES 7.1(a)(3) AND 7.3 CERTIFICATION

Counsel for The Daily Beast hereby certify that they repeatedly attempted to meet and confer with Plaintiff's counsel regarding the contents of this motion, as set forth in further detail in the accompanying Declaration of Katherine M. Bolger.  Plaintiff's counsel did not respond to these requests.

Date: October 5, 2020

Respectfully submitted,

/s/ *Roy Black*
Roy Black
Jared Lopez
Black, Srebnick, Kornspan & Stumpf, P.A.
201 So. Biscayne Boulevard
Miami, Florida 33131
rblack@royblack.com
jlopez@royblack.com

Katherine M. Bolger (*pro hac vice*)
Adam Lazier (*pro hac vice*)
Davis Wright Tremaine LLP
1251 Avenue of the Americas, 21st Floor
New York, New York 10020
katebolger@dwt.com
adamlazier@dwt.com

*Attorneys for Defendant*

## VERIFICATION

BEFORE ME, the undersigned authority, appeared Katherine M. Bolger, who being duly sworn, deposes and states that she has read the foregoing motion and the factual representations contained therein are true and correct to the best of her knowledge.

Executed on this 5th day of October, 2020.

_____
Katherine M. Bolger

WITNESS MY HAND AND SEAL in this County and State of New York last before said this 5th day of October, 2020.

_____
NOTARY PUBLIC (Signature)

**RACHEL STROM**
**Notary Public, State of New York**
**No. 02ST6171616**
**Qualified in Kings County**
**Commission Expires October 17, 2023**

_____
Print, Type or Stamp Commission
Name of Notary Public

Personally known____X____ or Produced Identification
Type of Identification produced: _____

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that I served draft copies of Defendant's Motion for Attorneys' Fees and Incorporated Memorandum of Law and Declaration of Katherine M. Bolger and accompanying exhibits, upon Plaintiff's counsel on September 3, 2020, in compliance with Local Rule 7.3(b). I hereby further certify that on October 5, 2020, a true and correct copy of the foregoing was served via electronic mail on all counsel of record, upon the filing of the foregoing with the Court's ECF system.

/s/ *Katherine M. Bolger*
Katherine M. Bolger