**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**Case No.: 19-cv-14472-JEM**

DAN BONGINO

   Plaintiff,

vs.

THE DAILY BEAST COMPANY, LLC

   Defendant.
_____/

**DECLARATION OF KATHERINE M. BOLGER IN SUPPORT OF DEFENDANT THE DAILY BEAST COMPANY, LLC'S MOTION FOR ATTORNEYS' FEES AND COSTS**

I, Katherine M. Bolger, declare as follows:

1.  I am a partner at Davis Wright Tremaine LLP ("DWT") and counsel to Defendant The Daily Beast Company, LLC ("The Daily Beast") in this litigation. I make this declaration in support of The Daily Beast's Motion for Attorneys' Fees and Costs and Incorporated Memorandum of Law.

2.  In this motion, The Daily Beast seeks to recover attorneys' fees for services rendered by two attorneys at DWT—myself and a senior associate, Adam Lazier (collectively, "DWT counsel")—as well as two support staff, Marni Shapiro and Trevor Franklin.

**The Reasonableness of DWT Counsel's Hourly Rates:**

3.  DWT is a law firm widely acknowledged among the country's top media law practices. Both Best Lawyers and U.S. News named DWT as the 2020 Law Firm of the Year in Media Law; and Law360 also named DWT as a national "Practice Group of the Year" in Media & Entertainment Law for the past three years.

4.  Mr. Lazier and I are both based in DWT's New York office and have extensive media litigation experience:

5. <u>Kate Bolger, DWT Partner</u>:  I have more than 20 years of media litigation experience.  Since graduating from the University of Chicago Law School in 1998, I have practiced at several nationally recognized law firms, representing major news and entertainment companies in high-profile First Amendment and defamation cases, and counseling media clients about prepublication issues.  I served as the immediate past head of the Communications Law Committee for the Association of the Bar of the City of New York and as an adjunct professor at Fordham Law School.  I was recognized as one of Law360's 2019 Media & Entertainment MVPs.  In 2019, Best Lawyers selected me as New York City's "Lawyer of the Year" in Media Law; they have also recognized me as one of the preeminent Media lawyers in New York since 2007.  Chambers USA has consistently named me as one of "America's Leading Lawyers for Business" in First Amendment Litigation (Nationwide) and in Media and Entertainment: First Amendment Litigation (New York) from 2015 to 2020; and also awarded me with a "Band 1" ranking for Media & Entertainment (New York) from 2019 to 2020.  Thomson Reuters also recognized me as a "New York Super Lawyer" in Media & Advertising and Entertainment & Sports from 2014 to 2019.  A true and correct copy of my DWT web biography is attached hereto as Exhibit 1.

6. <u>Adam Lazier, DWT Senior Associate</u>:  Mr. Lazier, the senior associate who worked on this case with me, has nine years of experience practicing media and defamation law, including handling numerous complex and high-profile defamation litigations.  Mr. Lazier, who received his J.D. from the University of Toronto Faculty of Law in 2009, originally practiced media law in Canada.  He then received his LL.M. from New York University School of Law in 2015.  Best Lawyers recently recognized him as "One to Watch" in the field of intellectual property law.  A true and correct copy of Mr. Lazier's DWT web biography is attached hereto as Exhibit 2.

7.      DWT Support Staff:  Marni Shapiro, the paralegal who assisted on this case, has 40 years of paralegal experience and has specialized in assisting with media and First Amendment cases.  A true and correct copy of Ms. Shapiro's DWT web biography is attached hereto as Exhibit 3.  Trevor Franklin, Senior Managing Clerk at DWT, also assisted in electronically filing some of the motion papers in this case.

8.      Mr. Lazier and I have litigated numerous cases involving anti-SLAPP statutes, and this case drew upon our knowledge of these statutes—particularly the elements required to satisfy the statute and the application of the statute in federal court.  Further, in establishing that Plaintiff's lawsuit lacked merit, we also drew upon our experience in litigating nuanced areas of media law, such as defamatory meaning and the single-action rule.

9.      DWT counsel and support staff substantially discounted our hourly rates for purposes of this litigation to meet the rates paid for by The Daily Beast's insurance company, Chubb.  While my hourly rate was $710/hour in 2019 and is $775/hour in 2020, I only charged $450/hour on this case.  Likewise, Mr. Lazier's hourly rate was $595/hour in both 2019 and 2020, but he only charged $350/hour on this case.  Both Ms. Shapiro and Mr. Franklin only charged $150/hour on this case, despite the fact that their 2019 and 2020 standard rates were more than double that amount.

10.     Accordingly, The Daily Beast seeks reimbursement based on the discounted hourly rates charged by DWT counsel in this matter:

| Davis Wright Tremaine LLP Hourly Rates | | | | |
|---|---|---|---|---|
| Name | Title | 2019 Standard Rate | 2020 Standard Rate | Discounted Rate for this Case |
| Kate Bolger | Partner | $710 | $775 | **$450** |
| Adam Lazier | Associate | $595 | $595 | **$350** |
| Marni Shapiro | Paralegal | $380 | $400 | **$150** |

| Trevor Franklin | Senior Managing Clerk | $320 | $340 | **$150** |

11. Based on a review of the case law as cited in the accompanying Memorandum of Law, the discounted hourly rates charged by the DWT counsel in this case are well within the range of, if not below, the median rates for attorneys with comparable tenures at peer firms in the South Florida legal community. The rates described above are particularly reasonable in light of the DWT counsel's experience, skill, and reputation.

**The Reasonableness of the Time DWT Counsel and Staff Billed to This Case:**

12. Attached hereto as Exhibit 4 is a true and correct record compiling DWT counsel and staff's hours devoted to defending The Daily Beast in this case. This record details the subject matter of DWT's work performed during those hours. The time entries for which The Daily Beast does not seek to recover in this motion have been redacted from Exhibit 4.

13. Because The Daily Beast has a $100,000.00 self-insured retention agreement in its Chubb media liability policy, The Daily Beast has paid all of the bills in this matter itself, without assistance from Chubb.

14. In an effort to submit the most reasonable fee request possible to the Court, as is evidenced by the redactions on the annexed bill, I wrote off almost all fees from the bill that were unrelated to the research, drafting, and filing of The Daily Beast's Motion to Dismiss and for attorneys' fees and costs under Florida's Anti-SLAPP Law (ECF No. 16) and Motion to Stay Discovery (ECF No. 17) and the reply memoranda for both (ECF Nos. 21 & 22). Accordingly, while it has incurred more fees, The Daily Beast only seeks to recover for 91.9 hours' worth of attorneys' fees, amounting to $31,835.00 in attorneys' fees. All of these hours were critical to the defense of the case. Below is a chart summarizing the hours and fees for which The Daily Beast

4

seeks reimbursement:

| Davis Wright Tremaine LLP Hours Billed | | | | |
|---|---|---|---|---|
| **Name** | **Title** | **Hours Billed** | **Discounted Rate for this Case** | **Fees Billed** |
| Kate Bolger | Partner | 15.9 | $450 | **$7,155** |
| Adam Lazier | Associate | 66.4 | $350 | **$23,240** |
| Marni Shapiro | Paralegal | 9 | $150 | **$1,350** |
| Trevor Franklin | Senior Managing Clerk | 0.6 | $150 | **$90** |
| Total | | 91.9 | | **$31,835** |

15.  Some of the services that I excluded from Exhibit 4 in an exercise of billing judgment included: drafting and filing a motion for an extension of the deadline to respond to the complaint; preparation for a scheduling hearing; drafting motions for *pro hac vice* admission; drafting a joint status report and conducting a Rule 16 conference with opposing counsel; and some early discovery efforts. I also excluded all costs incurred in this litigation; thus, The Daily Beast seeks only to recover its reasonable attorneys' fees. Finally, in an effort to minimize the number of timekeepers in Exhibit 4, I also excluded fees incurred by another DWT associate who had a more limited role in the litigation than Mr. Lazier.

16.  Because of his lower billing rate, Mr. Lazier researched and prepared initial drafts of the filings in this case. I undertook a supervisory role, editing the briefing and formulating the overall litigation strategy, thereby accruing fewer hours at my relatively higher rate. Indeed, as demonstrated in Exhibit 4, Mr. Lazier billed 66.4 hours in this case, while I billed 15.9. Mr. Lazier and I also delegated certain tasks such as cite-checking and e-filing to support staff, who billed at an even lower rate.

17.  As a standard billing practice, DWT attorneys keep contemporaneous daily time diaries that are entered into the firm's billing system as computerized records ("*pro forma*

statements"). These *pro forma* statements list the date service was rendered, the lawyer code, the amount of time billed in one-tenth hour increments, the amount to be billed based on historic billing rates, a brief description of the service rendered, and other administrative information. The *pro forma* statements are used as the raw data from which final bills are generated.

18. As the responsible attorney for The Daily Beast, I reviewed all of the *pro forma* statements in this case and exercised billing judgment before sending out a final bill to exclude time incorrectly billed or to modify amounts to eliminate unproductive or inefficient efforts. The final bill that is normally sent to a client does not show entries that are deleted during the *pro forma* review process but instead includes an invoice that shows the billing detail for the amounts actually charged. Exhibit 4 reflects this typical editing process.

19. The bills that DWT presented to The Daily Beast in connection with this matter have been reviewed by The Daily Beast's in-house counsel, Neil Rosenhouse, who found the amount of time and rates charged to be reasonable.

**Efforts Made to Meet and Confer:**

20. In compliance with Local Rule 7.3(b), I served a copy of this Motion, Memorandum of Law, Declaration, and accompanying exhibits on Plaintiff's counsel on September 3, 2020. Attached hereto as Exhibit 5 is a copy of this correspondence. In that email, I advised Plaintiff's counsel of their responsibility under Rule 7.3(b) to meet and confer within 21 days, and asked for their availability.

21. Plaintiff's counsel did not respond to this email. Accordingly, on September 21, 2020, I sent a follow-up email, asking Plaintiff's counsel if they wanted to meet and confer. Attached hereto as Exhibit 6 is a copy of this correspondence.

22.     Having still received no response from Plaintiff's counsel, I reached out once more on September 28, 2020, reminding counsel of our intent to file the Motion on October 5, 2020, and stating our availability to meet and confer.  Attached hereto as Exhibit 7 is a copy of this correspondence.  Plaintiff's counsel did not respond.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on:  October 5, 2020                                            /s/ *Katherine M. Bolger*
               New York, New York                                                Katherine M. Bolger